**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.,
Fla. Bar No. 0182877
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NESTOR OURANITSAS, Individually and on behalf of all others similarly situated, | **Case No:** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, CASSANDRA HARRIS, and MARIELA MATUTE, | |
| Defendants. | |

Plaintiff Nestor Ouranitsas ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the

1

investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Tupperware Brands Corporation. ("Tupperware" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.   This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Tupperware securities between March 10, 2021 and March 16, 2023, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.   The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Tupperware securities during the Class Period and was economically damaged thereby.

7.      Defendant Tupperware purports to be "a leading global consumer products company that designs innovative, functional, and environmentally responsible products. Founded in 1946, the Company's signature container created the modern food storage category that revolutionized the way the world stores, serves, and prepares food. Today, this iconic brand has more than 8,500 functional design and utility patents for solution-oriented kitchen and home products. With a purpose to nurture a better future, the Company's products are an alternative to single-use

3

items. The Company distributes its products into nearly 70 countries primarily through approximately 3.1 million independent sales force members around the world with approximately 553 thousand active at any designated point in time. Worldwide, the Company engages in the marketing, manufacture, and sale of design-centric preparation, storage, and serving solutions for the kitchen and home through the Tupperware brand name. The Company primarily uses a direct selling business model to distribute and market products, while continuing to expand digital platforms and business-to-business distribution channels. Through personal connections, product demonstrations, and understanding of consumer needs, the Company's sales force members have been selling products to customers for over 75 years."

8.      Defendant Tupperware is incorporated in Delaware and its head office is located at 14901 South Orange Blossom Trail, Orlando, Florida, 32837. Tupperware securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "TUP".

9.      Defendant Miguel Fernandez ("Fernandez") has served as the Company's Chief Executive Officer ("CEO"), President, and Director since April 2020.

4

10.    Defendant Cassandra Harris ("Harris") served as the Company's Chief Financial Officer from April 2019 through May 2022. Defendant Harris also served as Chief Operating Officer.

11.    Defendant Mariela Matute ("Matute") has served as the Company's Chief Financial Officer since May 24, 2022.

12.    Defendants Fernandez and Harris are collectively referred to herein as the "Individual Defendants."

13.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.    Tupperware is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tupperware under *respondeat superior* and agency principles.

16.    Defendant Tupperware and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**
**Materially False and Misleading**
**Statements Issued During the Class Period**

17.    On March 10, 2021, Tupperware filed with the SEC its 2020 Annual report on Form 10-K for the year ended December 26, 2020 (the "2020 Annual Report"). Attached to the 2020 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Fernandez and Harris

attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.    The 2020 Annual Report did not disclose that it did not properly account for the completeness, accuracy and presentation of the income tax provision, as well as for leases. The 2020 Annual Report provided the following, in pertinent part, regarding the Provision for income taxes:

> Provision for income taxes was $100.1 million and $91.0 million in 2020 and 2019, respectively. The effective tax rate was 47.2 percent and 88.0 percent in 2020 and 2019, respectively. The change in effective tax rate in 2020 from 2019 was primarily due to:
> •a favorable treatment of gain on debt extinguishment and gain from the sale-leaseback of the Company headquarters in Orlando, Florida along with sale of certain surrounding land, sheltered by a mixture of previously valued foreign tax credits and global intangible low-taxed income ("GILTI") tax credits
> •partially offset by losses in United States that currently have no tax benefit, and
> •an unfavorable adjustment related to a continued limitation of interest expense deductions requiring a valuation allowance
> Refer to Note 4: Income Taxes to the Consolidated Financial Statements in Item 8. Financial Statements and Supplementary Data for further information.

19.    The 2020 Annual Report did not disclose any material weaknesses in the Company's internal controls relating to the provision for income taxes. The 2020 Annual Report disclosed weaknesses relating to financial reporting at the Tupperware Mexico location. The 2020 Annual Report stated, in pertinent part:

The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives. Further, because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that misstatements due to error or fraud will not occur or that all control issues and instances of fraud, if any, within the Company will be detected.

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. ***As of December 26, 2020, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the disclosure controls and procedures were not effective at the reasonable assurance level as of such date due to a material weakness in internal control over financial reporting at its Tupperware Mexico location described below.***

***Following identification of the material weakness and prior to filing this Annual Report on Form 10-K, the Company completed substantive procedures for the year ended December 26, 2020. Based on these procedures, management believes that its consolidated financial statements included in this Form 10-K have been prepared in accordance with GAAP.*** The Company's Chief Executive Officer and Chief Financial Officer have certified that, based on their knowledge, the financial statements, and other financial information included in this Form 10-K, fairly present in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, the periods presented in this Form 10-K.

(Emphasis added).

20.    Then, on May 5, 2021, Tupperware filed with the SEC its quarterly report on Form 10-Q for the period ended March 27, 2021 (the "1Q21 Report"). Attached to the 1Q21 Report were certifications pursuant to SOX signed by defendants Fernandez and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21.    The 1Q21 Report did not disclose that the Company did not properly account for the completeness, accuracy, and presentation of the income tax provision, as well as related income tax assets and liabilities, as well as leases.

22.    The lQ21 Report provided the following, in pertinent part, regarding the Provision for Income Taxes:

> Provision (benefit) for income taxes was a provision of $20.8 million and a benefit of $0.5 million in the first quarters of 2021 and 2020, respectively. The effective tax rate was 31.5 percent and 6.0 percent in the first quarters of 2021 and 2020, respectively. The change in the effective tax rate in the first quarters of 2021 and 2020, respectively, was primarily due to:
> •an increase in profitability for the first quarter ended March 27, 2021 as compared to the same period last year, due to the Company's turnaround efforts
> •a favorable jurisdictional mix of earnings
> •partially offset by losses in the United States that currently have no tax benefit, and an unfavorable adjustment related to a continued limitation of interest expense deductions requiring a valuation allowance
> Refer to Note 6: Income Taxes to the Consolidated Financial Statements in Item 1. Financial Statements for further information.

23.    The 1Q21 Report did not disclose any material weaknesses in the

Company's internal controls related to the provision for income taxes or leases. In pertinent part, the 1Q21 Report provided the following:

> The Company maintains disclosure controls and procedures (as defined in Rules 13a-15(e) and 15(d)-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

> As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were not effective as of such date due to a material weakness in internal control over financial reporting that was disclosed in the Company's Annual Report on Form 10-K for the fiscal year ended December 26, 2020.

24.     Then, on August 5, 2021, after market hours, Tupperware filed with the SEC its quarterly report on Form 10-Q for the period ended June 26, 2021 (the "2Q21 Report"). Attached to the 2Q21 Report were certifications pursuant to SOX signed by defendants Fernandez and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

25.     The 2Q21 Report did not disclose that the Company did not properly account for the completeness, accuracy, and presentation of the income tax

provision, as well as related income tax assets and liabilities, as well as leases. In pertinent part, the 2Q21 Report provided the following:

> Provision (benefit) for income taxes was a provision of $23.5 million and $18.8 million in the second quarters of 2021 and 2020, respectively, and provision of $44.3 million and $18.3 million in the respective year-to-date periods. The effective tax rate was 39.8 percent and 22.8 percent in the second quarters of 2021 and 2020, respectively. The change in the effective tax rate, was primarily due to:
> •non-recurring gain from debt extinguishment in the second quarter of 2020 that was offset with previously reserved assets
> •continued unfavorable losses in 2021 as compared to 2020 in the United States that currently have no tax benefit, and an unfavorable adjustment related to a continued limitation of interest expense deductions requiring a valuation allowance
> •change in jurisdictional mix of earnings
> Refer to Note 6: Income Taxes to the Consolidated Financial Statements in Item 1. Financial Statements for further information.

26.     The 2Q21 Report did not disclose any material weaknesses in the Company's internal controls related to the provision for income taxes or leases. In pertinent part, the 2Q21 Report provided the following:

> The Company maintains disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) that are designed to provide reasonable assurance that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.
> As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the Company's disclosure controls and procedures. Based upon that evaluation, the Chief Executive Officer and

Chief Financial Officer concluded that the Company's disclosure controls and procedures were not effective at the reasonable assurance level as of such date due to material weaknesses in internal control over financial reporting described below.

**Material Weaknesses in Internal Control over Financial Reporting**

As discussed in Item 8. Financial Statements and Supplementary Data to the Consolidated Financial Statements in the Company's 2020 Form 10-K/A filed on August 5, 2021 (the "Form 10-K/A"), the Company determined that it should not have concluded that certain adjustments recognized in the third quarter of 2019 were changes in estimates. New facts, information and data, that were first understood by management in the second quarter of 2021, resulted in management reassessing such 2019 adjustments and concluding that these adjustments were misstatements as a result of management override at Fuller Mexico. As discussed in Item 9A of the Form 10-K/A, management also reassessed its conclusion on the effectiveness of internal control over financial reporting and determined the following material weaknesses exist at December 26, 2020, March 27, 2021 and June 26, 2021.

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. The Company identified material weaknesses in the control environment at its Mexico operations; specifically, with respect to information technology general controls, the Company did not maintain effective user access controls to ensure appropriate segregation of duties and to adequately restrict user and privileged access to financial applications and data to appropriate Company personnel at Tupperware Mexico; and there was override by local management of certain internal controls at the Tupperware Mexico and Fuller Mexico locations resulting in immaterial misstatements in net sales, accounts receivable, inventories, and accrued liabilities during the fiscal years ended 2020, 2019 and 2018 and each of the interim periods in those annual periods.

Additionally, it is reasonably possible that these material weaknesses could result in a material misstatement to the Company's annual or interim consolidated financial statements that would not be prevented or detected. Based on these material weaknesses, management concluded that the Company's internal control over financial reporting was not effective at

December 26, 2020, March 27, 2021 and June 26, 2021.

27.   On August 5, 2021, after market hours, Tupperware filed with the SEC its quarterly report on Form 10-K/A for the year ended December 26, 2020 (the "Amended 2020 Report").

28.   The Amended 2020 Report was filed to reflect "as a result of identifying additional material weaknesses in the Company's internal control over financial reporting related to the control environment at its Mexico operations and that there was override by local management of certain internal controls at the Fuller Mexico location, and are being made in connection with the Company preparing for, and responding to, ongoing inquiries from the SEC regarding the Company's Fuller Mexico and Tupperware Mexico locations (the "Mexico operations")." The Amended 2020 Report did not reflect issues with accounting for income tax liability or other matters at issue in this litigation.

29.   On November 4, 2021, after market hours, Tupperware filed with the SEC its quarterly report on Form 10-Q for the period ended September 25, 2021 (the "3Q21 Report"). Attached to the 3Q21 Report were certifications pursuant to SOX signed by defendants Fernandez and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

30.   The 3Q21 Report did not disclose that the Company did not properly

13

account for the completeness, accuracy, and presentation of the income tax provision, as well as related income tax assets and liabilities, as well as leases. In pertinent part, the 2Q21 Report provided the following:

> Provision (benefit) for income taxes was a benefit of $12.4 million and a provision of $21.9 million in the third quarters of 2021 and 2020, respectively, and provision of $32.2 million and $38.7 million in the respective year-to-date periods. The effective tax rate was a benefit of 25.8 percent and a provision of 42.7 percent in the third quarters of 2021 and 2020, respectively. The change in the effective tax rate in the third quarters of 2021 and 2020, respectively, was primarily due to:
> •favorable impact from utilization of previously valued deferred tax assets due to a tax policy change discussed further below,
> •a favorable jurisdictional mix of earnings,
> •non-recurring gain from debt extinguishment in 2020 that was offset with previously reserved assets
> The Company made an election on its 2020 tax return to change its capitalization policy for tax purposes related to certain direct and indirect costs for inventory and self-constructed assets under IRC Section 263A. This method change will allow the Company to utilize a portion of its tax attributes in the U.S., primarily foreign tax credits, that were previously fully reserved. The non-recurring impact of the method change is a 2020 return to provision discrete benefit of $15.7 million, related to prior years, and an additional current year benefit of approximately $15 million from the release of valuation allowances that will be included in the annual effective tax rate for the year. This change only impacts a portion of the Company's foreign tax credits and the Company will maintain a valuation allowance against the remaining balance of foreign tax credits.
> Refer to Note 6: Income Taxes to the Condensed Consolidated Financial Statements in Item 1. Financial Statements for further information.

31.    The 3Q21 Report did not disclose any material weaknesses in the Company's internal controls related to the provision for income taxes or leases. In pertinent part, the 3Q21 Report made essentially the same disclosure as the 2Q21 Report regarding issues at the Company's Mexico location.

32.     On February 3, 2022, after market hours, Tupperware filed with the SEC its 2021 Annual report on Form 10-K for the year ended December 25, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were certifications pursuant to SOX signed by Defendants Fernandez and Harris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

33.     The 2021 Annual Report did not disclose that it did not properly account for the completeness, accuracy and presentation of the income tax provision, as well as related income tax assets and liabilities.

34.     The 2021 Annual Report provided the following, in pertinent part, regarding the Provision for Income Taxes:

> Provision for income taxes was $42.6 million and $95.8 million in 2021 and 2020, respectively. The effective tax rate was 21.5 percent and 46.3 percent in 2021 and 2020, respectively. The change in effective tax rate in 2021 from 2020 was primarily due to:
> •favorable impact from the utilization of previously valued deferred tax assets due to a tax policy change related to certain direct and indirect costs for inventory and self-constructed assets under Internal Revenue Code ("IRC") Section 263A
> •favorable jurisdictional mix of earnings,
> •partially offset by losses in United States that currently have no tax benefit
> Refer to Note 4: Income Taxes to the Consolidated Financial Statements in Item 8. Financial Statements and Supplementary Data for further information.

35.     The 2021 Annual Report did not disclose any material weaknesses in

the Company's internal controls:

> The Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives. Further, because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that misstatements due to error or fraud will not occur or that all control issues and instances of fraud, if any, within the Company will be detected.

> As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. ***As of December 25, 2021, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the disclosure controls and procedures were effective at the reasonable assurance level..***

> (Emphasis added).

36.     Then, on May 5, 2022, after market hours, Tupperware filed with the

SEC its quarterly report on Form 10-Q for the period ended March 26, 2022 (the

"1Q22 Report"). Attached to the 1Q22 Report were certifications pursuant to SOX

signed by defendants Fernandez and Harris attesting to the accuracy of financial

reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

37.    The 1Q22 Report did not disclose that the Company did not properly account for the completeness, accuracy and presentation of the income tax provision, as well as related income tax assets and liabilities.

38.    The lQ22 Report provided the following, in pertinent part, regarding the Provision for Income Taxes:

> Provision for income taxes was a provision of $6.8 million and $20.7 million in the first quarter of 2022 and 2021, respectively. The effective tax rate was 73.1 percent and 32.0 percent in the first quarter of 2022 and 2021, respectively. The change in the effective tax rate in the first quarter of 2022 and 2021, respectively, was primarily due to:
> •negative impact of the Global Intangible Low Taxed Income (GILTI) regime, which results in no benefit for any losses incurred in the U.S.
> •unfavorable mix of income between our U.S. and Non U.S. operations that drive the Company's tax expense
> •Additional valuation allowance on disallowed interest expense due to the change in 163j rules from EBIDTA to EBIT. The Company maintains a full valuation allowance on deferred tax assets for interest carryforwards.
> Refer to Note 6: Income Taxes to the Condensed Consolidated Financial Statements in Item 1. Financial Statements for further information.

39.    The 1Q22 Report provided the following, in pertinent part, regarding the Company's internal controls:

> As of the end of the period covered by this report, management, *under the supervision of the Company's Chief Executive Officer and Chief Financial Officer*, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. *As of March 26, 2022, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the disclosure controls and procedures were effective at the reasonable assurance level*.

(Emphasis added).

40.     Then, on August 4, 2022, after market hours, Tupperware filed with the SEC its quarterly report on Form 10-Q for the period ended June 25, 2022 (the "2Q22 Report"). Attached to the 2Q22 Report were certifications pursuant to SOX signed by defendants Fernandez and Matute attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

41.     The 2Q22 Report did not disclose that the Company did not properly account for the completeness, accuracy and presentation of the income tax provision, as well as related income tax assets and liabilities.

42.     The 2Q22 Report provided the following, in pertinent part, regarding the Provision for Income Taxes:

> Provision for income taxes was $14.8 million and $23.8 million in the second quarter of 2022 and 2021, respectively and $21.6 million and $44.5 million in the year-to-date periods ended June 25, 2022 and June 26, 2021, respectively. The effective tax rate was 76.7 percent and 42.7 percent in the second quarter of 2022 and 2021, respectively. The change in the effective tax rate in the second quarter of 2022 and 2021, respectively, was primarily due to:
> •negative impact of the Global Intangible Low Taxed Income (GILTI) regime, which results in no benefit for any losses incurred in the U.S.,
> •an unfavorable jurisdictional mix of earnings that includes income earned in foreign operations that drive the Company's tax expense unable to be offset by benefits of losses in other jurisdictions where income declined,
> •Additional valuation allowance on disallowed interest expense due to the change in Internal Revenue Code Section 163j rules from EBITDA to

EBIT. The Company maintains a full valuation allowance on deferred tax assets for interest carryforwards.

Refer to Note 6: Income Taxes to the Condensed Consolidated Financial Statements in Item 1. Financial Statements for further information.

43.    The 2Q22 Report provided the following, in pertinent part, regarding the Company's internal controls:

As of the end of the period covered by this report, management, ***under the supervision of the Company's Chief Executive Officer and Chief Financial Officer***, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. ***As of June 25, 2022, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the disclosure controls and procedures were effective at the reasonable assurance level***.

(Emphasis added).

44.    Then, on November 2, 2022, after market hours, Tupperware filed with the SEC its quarterly report on Form 10-Q for the period ended September 24, 2022 (the "3Q22 Report"). Attached to the 3Q22 Report were certifications pursuant to SOX signed by defendants Fernandez and Matute attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial report, and the disclosure of all fraud.

45.    The 3Q22 Report reported one error relating to an income tax expense, it did not fully disclose that the Company did not properly account for the completeness, accuracy and presentation of the income tax provision, as well as related income tax assets and liabilities.

46.     The 3Q22 Report provided the following, in pertinent part, regarding

the Provision for Income Taxes:

> Provision (benefit) for income taxes was a provision of $11.0 million and a
> benefit of $12.4 million in the third quarter of 2022 and 2021, respectively,
> and a provision of $32.6 million and $32.2 million in the year-to-date
> periods ended September 24, 2022 and September 25, 2021, respectively.
> The effective tax rate was 152.8 percent and (25.8) percent in the third
> quarter of 2022 and 2021, respectively. The change in the effective tax rate
> in the third quarter of 2022 as compared to the third quarter of 2021, was
> primarily due to:
> • a non-recurring favorable impact from a tax policy change elected in the
> prior year related to a tax method change for certain direct and indirect
> costs of inventory and self-constructed assets under IRC Section 263A,
> • an unfavorable jurisdictional mix of earnings, significantly impacted by
> the marginal pre-tax earnings in the third quarter of 2022,
> • negative impact of the GILTI regime, which results in a reduction of
> benefits on domestic losses,
> • additional valuation allowance on disallowed interest expense due to the
> change in IRC Section 163(j) rules from EBIDTA to EBIT. The Company
> maintains a full valuation allowance on deferred tax assets for interest
> carryforwards, and
> • as described in Note 1: Summary of Significant Accounting Policies, the
> Company recorded an out-of-period adjustment to income tax expense
> during the third quarter of 2022, which resulted in a $1.3 million decrease
> in income from continuing operations. This error resulted from
> intercompany costs which were allocated to an incorrect legal entity
> resulting in net understatement of income tax expense for these entities.
> Refer to Note 6: Income Taxes to the Condensed Consolidated Financial
> Statements in Item 1. Financial Statements for further information.

47.     The 3Q22 Report provided the following, in pertinent part, regarding

the Company's internal controls:

> As of the end of the period covered by this report, management, **_under the
> supervision of the Company's Chief Executive Officer and Chief
> Financial Officer_**, evaluated the effectiveness of the design and operation
> of the Company's disclosure controls and procedures. **_As of September 24,_**

*2022, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the disclosure controls and procedures were effective at the reasonable assurance level*.

(Emphasis added).

48.     The statements contained in ¶¶ 17-47 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Tupperware did not disclose its serious issues with internal controls; (2) Tupperware's financial statements, from its 2020 Annual Report to the present, included misstatements, particularly as it related to the Company's accounting for income taxes; (3) as a result, Tupperware would need to restate its previously filed financial statements for certain periods; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

49.     On March 1, 2023, before the market opened, the Company announced that it had identified misstatements in prior annual and unaudited interim periods. In particular, these misstatements related to the Company's historical accounting for income taxes. It expected to report at least one material

21

weakness, stating the following, in pertinent part, in its current report filed with the

SEC on Form 8-K:

> *In connection with its year end financial close process, the Company has identified misstatements which originated in prior annual and unaudited interim periods, the most significant of which to date relate to the Company's historical accounting for income taxes*. Until the Company has completed its final close process, there is the possibility that additional current and prior period misstatements could be identified. *The Company will reflect the correction of the previously issued financial statements in its Annual Report on Form 10-K for the 2022 fiscal year (the "Form 10-K")*. The Company is evaluating the method of correction. *The preliminary results as of and for the interim and annual periods ended December 25, 2021 have been adjusted to correct for the prior periods misstatements identified through the date of this press release*.
>
> *In addition, the Company concluded that it did not design and maintain effective internal controls related to the accounting for the completeness, occurrence, accuracy, and presentation of the income tax provision and related income tax assets and liabilities. Accordingly, in the 2022 Form 10-K, the Company will disclose a material weakness in internal control over financial reporting and, as a result, that its disclosure controls and procedures and internal control over financial reporting were not effective as of December 31, 2022*.

(Emphasis added.)

50.    On this news, Tupperware's stock fell 14.88% to close at $3.49 per

share on March 1, 2023, on unusually heavy trading volume, damaging investors.

51.    Then, on March 16, 2023, after the market closed, the Company filed

with the SEC a Late filing notice on Form NT 10-K (the "Late Filing Notice"),

reporting that it was unable to file its Annual Report on Form 10-K for the year

ended December 31, 2022 "by the prescribed due date, without unreasonable effort or expense because it requires additional time to complete the Form 10-K, including the restatement of certain of its previously issued financial statements as described below." The Late Filing Notice went on to state, in pertinent part:

> On March 12, 2023, the Audit and Finance Committee of the Board of Directors of the Company, upon recommendation by the management of the Company and in consultation with PricewaterhouseCoopers LLP, *the Company's independent registered public accounting firm, concluded that the Company's previously issued consolidated financial statements as of and for the years ended December 26, 2020 and December 25, 2021, and the previously issued unaudited interim condensed consolidated financial statements in 2021 and the first three quarters of 2022 (collectively, the "Relevant Periods"), as well as the associated press releases, were materially misstated and should be restated and no longer be relied upon because of the identification of material prior period misstatements.*
>
> To correct for such material misstatements, *the Company will restate its consolidated financial statements for the years ended December 26, 2020 and December 25, 2021, in connection with the filing of its Form 10-K.* Restated financial information as of and for the impacted 2022 and 2021 quarterly and year-to-date periods will be included in the 2022 Form 10-K. The Company will effect the restatement of its 2022 unaudited condensed consolidated quarterly financial statements in connection with the future filings of its Quarterly Reports on Form 10-Q in 2023.
>
> *To date, the misstatements that originated in periods prior to 2020 are expected to result in a $23-28 million reduction to the previously reported 2020 beginning retained earnings, with such reduction primarily resulting from misstatements related to income taxes.* The Company also currently estimates that the net impact of the prior period misstatements on the restated financial statements will result in an increase in net income from continuing operations for the year ended December 26, 2020, and a decrease in net income from continuing operations for the year ended December 31, 2021 and for the 2022 unaudited interim periods. However, such estimates are preliminary and are subject to change as the Company completes its financial close process, and such changes could be significant.

*The Company also has determined that material weaknesses existed in the Company's internal control over financial reporting as of December 31, 2022 in the following areas:* The Company did not design and maintain effective controls in response to the risks of material misstatement. Specifically, changes to existing controls or the implementation of new controls were not sufficient to respond to changes to the risks of material misstatement in financial reporting. This material weakness contributed to the following material weaknesses: (i) accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities; and (ii) completeness, accuracy and presentation of right of use assets and lease liabilities. There can be no assurance that additional material weaknesses will not be identified as the Company completes its financial close process.

Due to the time and effort required to complete the preparation of the restated consolidated financial statements for the Relevant Periods, the Company was unable, without unreasonable effort or expense, to complete and file the Form 10-K within the prescribed time period. The Company is endeavoring to complete its financial close process and Form 10-K filing as promptly as possible; however, there can be no assurance that the Company will be able to file the Form 10-K within the extension period.

(Emphasis added).

52.     Then, also on March 16, 2023, after the market closed, the Company

filed with the SEC a Current Report on Form 8-K stating, in pertinent part:

During the financial year-end close process of Tupperware Brands Corporation (the "Company" or the "Registrant"), management, with assistance from its tax and accounting advisors, identified several adjustments related to prior and current periods that have given rise to a restatement of previously issued financial statements. *The Company believes that the adjustments identified to date are primarily non-cash corrections related to income taxes and lease accounting treatment. As a result, the Company expects to delay the filing of its 2022 Annual Return on Form 10-K, as further discussed below.*

On March 12, 2023, the Audit and Finance Committee of the Company's

24

Board of Directors, based on the recommendation of management of the Company and after consultation with PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, *concluded that the Company's previously issued consolidated financial statements as of and for the years ended December 26, 2020 and December 25, 2021, and the previously issued unaudited interim condensed consolidated financial statements in 2021 and the first three quarters of 2022 (collectively, the "Relevant Periods")*, as well as the associated earnings press releases, were materially misstated and therefore the financial statements should be restated and the financial statements and earnings press releases should no longer be relied upon.

While preparing the consolidated financial statements for the year ended December 31, 2022, the Company identified multiple prior Relevant Period misstatements, the most material of which identified to date relate to the Company's accounting for income taxes and leases. *These newly identified misstatements are in addition to other prior Relevant Period misstatements previously identified by the Company during 2022, as well as misstatements that were previously identified and disclosed in the Company's Annual Reports on Form 10-K as of and for the years ended December 25, 2021 and December 26, 2020 and in certain 2022 and 2021 Quarterly Reports on Form 10-Q.* These previously identified misstatements were initially corrected as out of period correcting adjustments in the financial statements related to the periods of identification. After consideration of both newly identified and previously identified misstatements, taken both individually and in the aggregate, and assessed quantitatively and qualitatively, the Company's Audit and Finance Committee, based on management's recommendation, concluded that such misstatements were material to the Company's previously issued financial statements for the Relevant Periods. The Company will correct for such misstatements by restating its 2021 and 2020 consolidated financial statements, in connection with the filing of its 2022 Annual Report on Form 10-K. Restated financial information as of and for the impacted 2022 and 2021 quarterly and year-to-date periods will be included in the 2022 Form 10-K. The Company will effectuate the restatement of its 2022 unaudited condensed consolidated quarterly financial statements in connection with the future filings of its Quarterly Reports on Form 10-Q in 2023.

To date, the misstatements that originated in periods prior to 2020 are expected to result in a $23-28 million reduction to the previously reported

2020 beginning retained earnings, with such reduction primarily resulting from misstatements related to income taxes. ***The Company also currently estimates that the net impact of the prior period misstatements on the restated financial statements will result in an increase in net income from continuing operations for the year ended December 26, 2020, and a decrease in net income from continuing operations for the year ended December 31, 2021 and for the 2022 unaudited interim periods.*** However, such estimates are preliminary and are subject to change as the Company completes its financial close process, and such changes could be significant.

***Additionally, the Company has determined that material weaknesses exist in its internal control over financial reporting as of December 31, 2022***. The Company did not design and maintain effective controls in response to the risks of material misstatement. Specifically, changes to existing controls or the implementation of new controls were not sufficient to respond to changes to the risks of material misstatement in financial reporting. This material weakness contributed to the following material weaknesses related to the:

- Accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities; and
- Accounting for the completeness, accuracy and presentation of right of use assets and lease liabilities.

As a result, the Company's Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective as of March 26, 2022, June 25, 2022, September 24, 2022, and December 31, 2022.

There can be no assurance that additional material weaknesses will not be identified as the Company completes its financial close process. The Company's management and the Audit and Finance Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP. The Company is working to complete its financial close process and complete its 2022 Annual Report on Form 10-K, including the 2021 and 2020 restated financial statements and quarterly restated financial information as further discussed above, as promptly as possible. On March 16, 2023, the Company expects to file a Notification of Late Filing on Form 12b-25 in order to obtain an additional fifteen calendar days in which to

endeavor to file the 2022 Form 10-K, however, there can be no assurance that the 2022 Form 10-K will be filed within such period.

(Emphasis added).

53.   On this news, the price of Tupperware's stock declined by $0.19 cents a share, or 7.7%, on March 17, 2023.

54.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

55.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Tupperware securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Tupperware, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tupperware securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate

discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

57.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

58.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Tupperware;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the

statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Tupperware to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Tupperware securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

61.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Tupperware shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- As a public issuer, Tupperware filed periodic public reports;

- Tupperware regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Tupperware's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Tupperware was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

62.   Based on the foregoing, the market for Tupperware securities promptly digested current information regarding Tupperware from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants**

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tupperware securities during the Class Period.

68.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Tupperware were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Tupperware, their control over, and/or receipt and/or modification of Tupperware's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Tupperware, participated in the fraudulent scheme alleged herein.

69.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tupperware personnel to members of the investing public, including Plaintiff and the Class.

70.     As a result of the foregoing, the market price of Tupperware securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tupperware securities during the Class Period in purchasing Tupperware securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

71.     Had Plaintiff and the other members of the Class been aware that the market price of Tupperware securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Tupperware securities at the artificially inflated prices that they did, or at all.

72.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

73.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Tupperware securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

74.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.     During the Class Period, the Individual Defendants participated in the operation and management of Tupperware, and conducted and participated, directly and indirectly, in the conduct of Tupperware's business affairs. Because of their senior positions, they knew the adverse non-public information about Tupperware's false financial statements.

76.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tupperware's financial condition and results of operations, and to

correct promptly any public statements issued by Tupperware which had become materially false or misleading.

77.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tupperware disseminated in the marketplace during the Class Period concerning Tupperware's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tupperware to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tupperware within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tupperware securities.

78.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tupperware.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of

the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 20, 2023                    **THE ROSEN LAW FIRM, P.A.**
                                         /s/Laurence M. Rosen
                                         Laurence M. Rosen, Esq.,
                                         Fla. Bar No. 0182877
                                         275 Madison Avenue, 40th Floor
                                         New York, New York 10016
                                         Telephone: (212) 686-1060
                                         Fax: (212) 202-3827
                                         Email: lrosen@rosenlegal.com