**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NESTOR OURANITSAS,**

        **Plaintiff,**

**v.**                                **Case No: 6:23-cv-511-PGB-EJK**

**TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, CASSANDRA HARRIS and MARIELA MATUTE,**

        **Defendants.**
_____/

## ORDER

This cause comes before the Court on the following:

1. Movant Mabel Wong's ("**Movant Wong**") Motion for Appointment as Lead Plaintiff and Approval of Counsel (Doc. 19);

2. Movant Herman Trip's ("**Movant Trip**") Motion for Appointment as Lead Plaintiff and Approval of Counsel (Doc. 21);

3. Movant Sikander Morad's ("**Movant Morad**") Motion for Appointment as Lead Plaintiff and Approval of Counsel (Doc. 24); and

4. Movants Gene Kirschbaum and Mickale Carter's ("**Movants Kirschbaum and Carter**") Motion for Appointment as Lead Plaintiffs and Approval of Counsel (Doc. 26) and Memorandum in

Opposition to the Appointment of Other Movants' Appointment (Doc. 36).

Upon consideration, Movant Kirschbaum and Carter's Motion for Appointment as Lead Plaintiff and Approval of Counsel is due to be granted, and the other Movants' motions are consequently denied.

## I. BACKGROUND

Plaintiff Nestor Ouranitsas ("**Plaintiff**") brings this securities fraud class action on behalf of himself and all others similarly situated after sustaining losses from the purchase of Tupperware Brands Corporation's ("**Defendant Tupperware**") securities. (Doc. 1). Plaintiff alleges losses incurred during the class period of March 10, 2021 through March 16, 2023 (the "**Class Period**") and flowing from Defendant Tupperware, Defendant Miguel Fernandez (the "**Defendant CEO**"), Defendant Cassandra Harris (the "**Defendant CFO/COO**"), and Defendant Mariela Matute's (the "**Defendant CFO**") (collectively, the "**Defendants**") violations of Sections 10(b) and Rule 10b–5 promulgated thereunder and 20(a) of the Securities Exchange Act of 1934. (*Id.* ¶¶ 64–78).

Specifically, Plaintiff alleges that on March 10, 2021, May 5, 2021, August 5, 2021, November 4, 2021, February 3, 2022, May 5, 2022, and August 4, 2022, Defendant Tupperware submitted various SEC filings which allegedly contained various material deficiencies. (*See id.* ¶¶ 17–78). The various individual Defendants signed at least some of these filings. (*Id.*). "On March 1, 2023, before

the market opened, [Defendant Tupperware] announced that it had identified misstatements in prior annual and unaudited interim periods. In particular, these misstatements related to [Defendant Tupperware]'s historical accounting for income taxes." (*Id.* ¶ 49). Defendant Tupperware's stock fell 14.88% to close at $3.49 per share on March 1, 2023. (*Id.* ¶ 50). On March 16, 2023, Defendant Tupperware released various SEC filings giving notice that it would be late filing its annual SEC Form 10-K due to some financial accounting adjustments. (*Id.* ¶¶ 51–52). On March 17, 2023, the price of Tupperware's stock declined by $0.19 cents a share, or 7.7%. (*Id.* ¶ 53).

Plaintiff now asserts that Defendants' alleged wrongful acts, misstatements, and/or omissions flowing from these events were in violation of federal securities laws and gave rise to the class's losses during the Class Period. (*Id.* ¶¶ 54–78). Accordingly, Plaintiff filed the present two-count class action on behalf of himself and all others similarly situated on March 20, 2023. (*Id.*).

Class actions alleging securities causes of action are governed by the Securities Exchange Act of 1934, § 21D(a), as amended by the Private Securities Litigation Reform Act of 1995 ("**PSLRA**"), 15 U.S.C. § 78u–4(a), and FED. R. CIV. P. 23. The PSLRA was enacted to remedy perceived abuses in the class action procedure in securities fraud actions. *See Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1303–09 (N.D. Ala. 2000) (discussing the problems with securities class actions resulting in the enactment of the PSLRA).

The PSLRA requires that notice be published in the first-filed action informing putative class members of their right to move for appointment as lead plaintiff within 60 days of the notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)–(ii). The Court is then tasked with considering all such motions and selecting a lead plaintiff that the Court "determines to be most capable of adequately representing the interests of class members[.]" *Id.* § 78u-4(a)(3)(B)(i)–(ii). As required by 15 U.S.C. § 78u–4(a)(3)(A)(i), the statutory notice was published on March 20, 2023 in *Business Wire*, giving potential lead plaintiffs until May 19, 2023 to file a motion to be appointed as a lead plaintiff. (Doc. 20-1). Four potential individuals or groups (the "**Movants**") timely moved for appointment as lead plaintiff(s) in this action on May 19, 2023. (Docs. 19, 21, 24, 26). Movant Trip, Movant Morad, and Movant Wong withdrew their motions.[1] (Docs. 30, 31, 35). The original named Plaintiff did not move to be named lead plaintiff.

First, Movant Wong alleges that as a result of Defendants' misstatements and omissions she has suffered harm of approximately $82,542.66. (Doc. 19-1, p. 6). Second, Movant Trip alleges that as a result of Defendants' misstatements and omissions she has suffered harm of approximately $118,075.22. (Doc. 22, p. 10). Third, Movant Morad alleges that as a result of Defendants' misstatements and omissions he has suffered harm of approximately $24,473.20. (*Id.* at p. 7). Fourth,

---

[1] Although the Movants' Motions are accordingly due to be denied as moot, the Court will nevertheless explain why Movant Kirschbaum and Carter are the most adequate representatives of the class.

4

Movants Kirschbaum and Carter (who are married) allege that as a result of Defendants' misstatements and omissions they collectively suffered harm of approximately $1,816,234. (*Id.* at p. 7). These motions are now ripe for review.

## II. DISCUSSION

For the following reasons, the Court finds Movants Kirschbaum and Carter to be the most adequate plaintiff in this action. Consequently, the Court appoints Movants Kirschbaum and Carter as lead plaintiffs and Bernstein Liebhard LLP as lead counsel.

### A. The Early Notice

"Before a district court may rule on a motion to appoint lead plaintiff, it has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation." *Montesano v. Eros Int'l PLC*, No. 19-14125, 2020 WL 1873015, at *2 (D.N.J. Apr. 14, 2020) (citations and quotation marks omitted); *see also Kanugonda v. Funko, Inc.*, No. C18-812, 2018 WL 9440603, at *1 (W.D. Wash. June 27, 2018) ("As the first step in the process, proper notice is vital and a court has an independent duty to scrutinize published notice for compliance with the PSLRA requirements." (citation and quotation marks omitted)); 15 U.S.C. § 78u-4(a)(3)(A). The purpose of the PSLRA is to "empower investors so that they — not their lawyers — exercise primary control over private securities litigation[.]" *In re Cendant Corp.*, 260 F.3d

183, 197 (3d Cir. 2001) (quoting S. Rep. No. 104–98, at 4 (1995)). Specifically, the notice requirement is meant to provide enough information to allow interested class members to directly "contact the Court and readily obtain a copy of the complaint . . . and/or file a motion to be appointed as lead [plaintiff] in that case." *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. 3:20-cv-1815, 2020 WL 6682531, at *2 (M.D. Pa. Nov. 12, 2020) (citations and quotation marks omitted). No movant challenges the sufficiency of the early notice in this case, and the Court finds it comports with the purposes of the PSLRA. Indeed, four potential lead plaintiffs with a significant interest in the case came forward to take control of it. (Docs. 19, 21, 24, 26).

### B. Designation of Lead Plaintiff

Whether a lead plaintiff will fairly and adequately represent the interests of the class is a question of fact for the district court. *Ehlert v. Singer*, 185 F.R.D. 674, 677–78 (M.D. Fla. 1999) (citation omitted). "The determination of fair and adequate representation rests on two bases: (1) common interests between a representative and the class and, (2) a willingness and ability to vigorously prosecute the action." *Id.* at 678. Furthermore, a lead plaintiff must not have any interests antagonistic to other class members. *Id.* "Most importantly, the purported representative 'must demonstrate that she will vigorously prosecute the action by providing both adequate financing and competent counsel.'" *Id.* (citations omitted). The PSLRA contains a rebuttable presumption that the most adequate lead plaintiff is that with the largest financial interest. 15 U.S.C. § 78u–

4(a)(3)(B)(iii)(I)(bb). During the Class Period, Movants Kirschbaum and Carter made purchases of Defendant Tupperware common stock that allegedly sustained an estimated loss of $1,815,234.48, the largest estimated loss sustained by the Movants. (Doc. 26-1, p. 10). It thus is presumptively the case that Movants Kirschbaum and Carter are the most adequate plaintiffs based upon their sizable financial interest in the case's just disposition. No party has come forward to rebut this presumption, and the other movants have withdrawn their motions.

Finally, the presumptive lead plaintiff must also satisfy "the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). FED. R. CIV. P. 23 requires that: (1) the claims of the proposed lead plaintiff be typical of the class; and (2) the representative will fairly and adequately represent the interests of the class. *See Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *2 (M.D. Fla. Feb.6, 1997) (finding wide-ranging analysis under Rule 23 not appropriate at this stage and focusing inquiry on typicality and adequacy). Furthermore, in the absence of a showing of a reasonable basis by another plaintiff, no evidentiary proof of the Rule 23 requirements is required at the lead plaintiff appointment stage since it would vitiate Congress' intent for a speedy lead plaintiff determination. *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997). Nevertheless, Movants Kirschbaum and Carter state they understand and accept their duties and obligations as prospective lead plaintiffs and that there are no unique defenses subject to their claims that would render them incapable of adequately advocating the interests of

the entire class. (Doc. 26-1). Further, in this case at least the common questions of law and fact outlined in the Complaint remain outstanding which Movants Kirschbaum and Carter can capably resolve on behalf of the class. (Doc 1, ¶ 59).

Movants Kirschbaum and Carter have therefore preliminarily satisfied the requirements of Rule 23 because their claims are typical of the class. *See Prado– Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278–79 n.14 (11th Cir. 2000) (finding typicality satisfied despite slight factual differences because the named representatives' claims share "same essential characteristics as the claims of the class at large"). Additionally, there is no indication in the record that Movants Kirschbaum and Carter's interests are not wholly aligned with the other members of the class. They have thus also demonstrated that they will fairly and adequately represent the interests of the class. Consequently, the Undersigned finds that Movants Kirschbaum and Carter have preliminarily satisfied the requirements of FED. R. CIV. P. 23 as required by 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc).

### C. Designation of Lead Counsel

Movants Kirschbaum and Carter also request that the law firms of Berstein Liebhard LLP be approved as lead counsel for the class. (Doc. 26).

Subject to the Court's approval, the PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class. *See* 15 U.S.C. § 78u– 4(a)(3)(B)(v). Additionally, "the most adequate plaintiff should choose lead counsel, rather than lawyers picking the plaintiffs." *Ehlert v. Singer*, 185 F.R.D. 674, 678 (M.D. Fla. 1999) (citation omitted).

8

Upon review of the firm resumes submitted to the Court (Doc. 26, p. 9–11; Doc. 26-5), the Court finds that Berstein Liebhard LLP is experienced in litigating securities class actions. Furthermore, they are currently representing Movants Kirschbaum and Carter. (Doc. 26). Accordingly, the Court designates Berstein Liebhard LLP as lead counsel with the firm of Mark Migdal & Hayden to serve as liaison counsel.

### III. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND JUDGED** as follows:

1. Movants Kirschbaum and Carter's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Doc. 26) is **GRANTED**;

2. Movants Kirschbaum and Carter are appointed and designated as lead Plaintiffs in this case;

3. The law firm of Berstein Liebhard LLP is approved as lead counsel for the lead plaintiffs with the law firm of Mark Migdal & Hayden to serve as liaison counsel for the Class;

4. Movant Wong's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Doc. 19) is **DENIED**;

5. Movant Trip's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Doc. 21) is **DENIED**;

6. Movant Morad's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Doc. 24) is **DENIED**;

7. Movants Kirschbaum and Carter as lead Plaintiffs shall have 30 days from the date of this Order within which to file an amended class action complaint; and

8. The Defendants shall have 45 days from the date of service of the amended class action complaint within which to respond to the same.

**DONE AND ORDERED** in Orlando, Florida on June 5, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties