## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NESTOR OURANITSAS, Individually and on behalf of all others similarly situated, | Case 6:23-cv-00511-PGB-EJK |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, CASSANDRA HARRIS, and MARIELA MATUTE, | |
| Defendants. | |

## AMENDED CLASS ACTION COMPLAINT FOR
## VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................1

II.     JURISDICTION AND VENUE ...................................................6

III.    THE PARTIES .............................................................................6

IV.    SUBSTANTIVE ALLEGATIONS.......................................................8

     A.    Tupperware's Home Products Business................................8

     B.    Tupperware Was Aware of Problems with Its Internal
          Control Environment Even Prior to the Class Period from
          Its Fuller Mexico Cosmetics Unit........................................9

     C.    Tupperware is Sanctioned by the SEC for Internal Control
          Failures at Fuller Mexico through the Year 2020 ..............19

     D.    Tupperware Falsely Asserts Internal Controls Are
          Adequate and Reports False Financial Statements in 2022 ................20

     E.    Tupperware Reveals Material Weaknesses in its Internal
          Control Over Financial Reporting and Plans to Restate Its
          Financial Statements ..........................................................21

     F.    Tupperware Restates Its Financial Results .........................30

     G.    Tupperware Clarifies How It Operated Without Internal
          Controls ..............................................................................34

     H.    Tupperware's Accounting Leadership Undergoes Major
          Upheaval.............................................................................35

     I.     Tupperware Terminates Its CEO .......................................36

     J.     Tupperware's Independent Registered Public Accountant
          Resigns After Almost 30 Years of Service...........................36

V.     DEFENDANTS' FALSE STATEMENTS AND OMISSIONS
     OF MATERIAL FACTS MADE WITH SCIENTER .................37

     A.    The February 23, 2022 False and Misleading Statements...................37

B. The May 5, 2022 False and Misleading Statements ............................39

C. The August 4, 2022 False and Misleading Statements ........................41

D. The November 2, 2022 False and Misleading Statements ..................43

VI. ADDITIONAL ALLEGATIONS OF SCIENTER .....................................45

A. At the latest, Defendants Knew or Should Have Been Aware of the Material Weaknesses in Tupperware's Internal Control Over Financial Reporting by February 23, 2022 .........................................................................................47

B. Defendants' SOX Certifications Are Indicative of Scienter ................50

C. Defendants' Scienter Is Supported by Suspiciously Timed Turnover in Tupperware's CEO, Senior Financial and Accounting Management, and Registered Public Accounting Firm ...................................................................51

VII. LOSS CAUSATION/ECONOMIC LOSS.................................................52

VIII. INAPPLICABILITY OF STATUTORY SAFE HARBOR .........................55

IX. PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET ...............................................................................................56

X. CLASS ACTION ALLEGATIONS ............................................................57

COUNT I  FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER  (AGAINST THE COMPANY AND INDIVIDUAL DEFENDANTS) ......................59

COUNT II  FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT  (AGAINST THE INDIVIDUAL DEFENDANTS) .....................................................................62

XI. PRAYER FOR RELIEF ............................................................................64

XII. JURY TRIAL DEMANDED .....................................................................65

1.      Plaintiffs Gene Kirschbaum and Mickale Carter ("Lead Plaintiffs"), by and through their undersigned counsel, allege the following upon information and belief, except as to those allegations concerning the Lead Plaintiffs' certification, which are alleged upon personal knowledge.  Lead Plaintiffs' information and belief are based upon, among other things, Lead Counsel's investigation, which includes without limitation: (i) review and analysis of Tupperware Brands Corporation's ("Tupperware" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"); (ii) review and analysis of Defendants' other public statements, including Tupperware's press releases and interviews that Defendants participated in with various news sources; (iii) review and analysis of reports of securities and financial analysts, news articles, and other commentary and analysis concerning Tupperware and the industry in which it operates; and (iv) review of pertinent court filings.  Lead Plaintiffs believe that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    INTRODUCTION

2.      Lead Plaintiffs seek to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) on behalf of a class of investors.

3.      This securities fraud class action is on behalf of a class of all persons who purchased Tupperware's publicly traded securities on the open market of a U.S. stock

exchange between February 23, 2022 and March 16, 2023, inclusive (the "Class Period"), and were damaged thereby (the "Class").

4.    Tupperware is a publicly traded company with its common stock listed on the New York Stock Exchange (NYSE) and is subject to the requirements of the Securities Exchange Act of 1934 (the "Exchange Act").

5.    As a publicly traded company, Defendants were required to issue reliable financial statements to investors and to design and maintain effective internal controls ensuring that a material misstatement of financial information was only a remote possibility.

6.    The internal control environment at Tupperware was historically a lower priority for management than increasing financial results.  From at least 2016 through 2020, the management of Tupperware's Fuller Mexico operating unit ("Fuller Mexico"), improperly increased sales via the shipment of unordered products, and improperly incurred expenses at Fuller Mexico.

7.    The SEC later confirmed Tupperware's lack of internal controls and issued a fine along with a cease-and-desist order finding that Tupperware "fail[ed] to devise and maintain a sufficient system of internal accounting controls and with failing to maintain accurate books and records from at least 2016 through 2020."

8.    On the first day of the Class Period, in Tupperware's Annual Report on Form 10-K for the Company's fiscal year ("FY") of 2021 (the "2021 Annual Report"), Tupperware announced that it corrected its lack of internal controls and stopped

2

allowing management at Fuller Mexico to override controls, which had created years of inaccurate financial results (the "Mismanagement at Fuller Mexico").

9.      The 2021 Annual Report broadcasted that the Company turned a corner despite revising past corrections to years of out-of-period misstatements previously disclosed in the Company's earlier annual reports for FY2020 related to Fuller Mexico and the Company's income tax provision and identifying additional misstatements for FY2021.

10.      Defendants certified that the FY2021 financial statements were reliable and concluded that the design and operation of the Company's disclosure controls and procedures were effective at the reasonable assurance level.

11.      Unbeknownst to investors at the time of the 2021 Annual Report was the fact that Defendants did not design critical internal controls for the accounting of its income tax provision and disclosure controls were otherwise absent from the Company during the Class Period.  Additionally, for the internal controls in place, Defendants used an artificially high materiality threshold, which kept previously identified accounting errors from rising to the point of requiring a restatement during any audit in 2022.

12.      On March 1, 2023, Tupperware began to reveal its control issues when as part of reporting its preliminary fourth quarter and full year FY2022 results it had identified misstatements in prior annual and unaudited interim periods.  In particular, these misstatements related to the Company's historical accounting for income taxes. The Company further disclosed that it did not design and maintain effective internal

controls related to the accounting for the completeness, occurrence, accuracy, and presentation of the income tax provision and related income tax assets and liabilities.

13.   On this news, Tupperware's stock price fell 14.88%, or $.61 cents per share, to close at $3.49 per share.

14.   The Class Period ends on March 16, 2023 when Tupperware revealed in a Form 8-K filed with the SEC (the "March 16, 2023 Form 8-K") that the out-of-period misstatements previously identified by the Company, in addition to newly identified errors, were material to the Company's previously issued financial statements, including the Company's consolidated financial statements as of and for the years ended December 26, 2020 and December 25, 2021, and the unaudited interim condensed consolidated financial statements in 2021 and the first three quarters of 2022 (the "Previously Issued Financial Statements").

15.   That same day, Tupperware further disclosed in a Notification of Late Filing with the SEC that it could not timely file its Annual Report on Form 10-K for FY2022 (the "2022 Annual report") as the Company's Previously Issued Financial Statements were materially misstated, could no longer be relied on, and required restatement (the "Restatement of its Previously Issued Financial Statements"). Accordingly, Tupperware admitted that material weaknesses existed in its internal control over financial reporting since the filing of its 2021 Annual Report on February 23, 2022.

16.     On this news, the price of Tupperware's stock price declined by $0.19 cents a share, or 7.7%, on March 17, 2023, the next trading day, to close at $2.27 per share.

17.     Over the next six months, Tupperware continued to delay filing the Restatement of its Previously Issued Financial Statements and revealed additional material weaknesses in its internal control over financial reporting.

18.     Ultimately, on October 13, 2023, Tupperware filed its 2022 Annual Report with the SEC, containing the Restatement of its Previously Issued Financial Statements.   The Restatement further confirmed that Defendants had wholly inadequate controls and were at least severely recklessness when issuing financial statements.  The Company restated hundreds of line-item adjustments, involving tens of millions of dollars to the Company's accounting of income taxes, including the income tax provision and related income tax assets and liabilities, right of use assets and lease liabilities, gains/losses related to intercompany loans, valuation of goodwill, and net impacts to the Company's previously reported income from continuing operations and diluted earnings per share from continuing operations.   The Restatement further disclosed a host of material weaknesses in Tupperware's internal control over financial reporting, including the accounting of its income tax provision.

19.     Shortly after the filing of Tupperware's Restatement, Tupperware's Chief Executive Officer, Chief Accounting Officer, and registered public accounting firm were either terminated or resigned.   In fact, within 10 days of the filing of the

Restatement, almost all of the individuals and entities that signed off on Tupperware's Class Period misrepresentations were no longer employed by the Company.

## II.    JURISDICTION AND VENUE

20.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

21.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

22.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).    Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this judicial district.

23.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of national securities exchanges.

## III.    THE PARTIES

24.    Lead Plaintiffs, as set forth in the certification previously filed with the Court, purchased Tupperware's publicly traded securities during the Class Period and suffered damages as a result of Defendants' federal securities law violations.

25.    Defendant Tupperware is incorporated under the laws of Delaware with its principal executive offices located in Orlando, Florida.    At all relevant times,

Tupperware's publicly traded securities was listed on the NYSE exchange in New York, NY under the symbol "TUP."

26.    Defendant Miguel Fernandez ("Fernandez") has served as the Company's CEO since April 2020.  Defendant Fernandez signed the Company's Quarterly Report on Form 10-Q for the first, second, and third quarters of FY2022, dated May 5, 2022, August 4, 2022, and November 2, 2022, respectively.  Defendant Fernandez also signed the Company's Annual Report on Form 10-K for FY2021, dated February 23, 2022.

27.    Defendant Cassandra Harris ("Harris") served as the Company's CFO from April 2019 through May 2022.  Defendant Harris was demoted to COO on May 4, 2022 and was terminated approximately less than a month later.  Defendant Harris signed the Company's Quarterly Report on Form 10-Q for the first quarter of FY2022, dated May 5, 2022, as well as the Company's Annual Report on Form 10-K for FY2021, dated February 23, 2022.

28.    Defendant Mariela Matute ("Matute") has served as the Company's CFO since May 24, 2022.  Defendant Matute signed the Company's Quarterly Report on Form 10-Q for the second and third quarters of FY2022, dated August 4, 2022 and November 2, 2022, respectively.

29.    Defendants Fernandez, Harris, and Matute (collectively, the "Individual Defendants"), by virtue of their high-level positions with Tupperware, possessed the power and authority to control the contents of the Company's reports filed with the SEC, and public statements, including Company-issued press releases and

7

presentations to securities analysts, money and portfolio managers, and investors. The Individual Defendants were provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected, including to disclose all material information omitted from those disclosures, as alleged herein. Because of their positions and access to material, non-public information, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and/or misleading.

30. Defendant Tupperware and the Individual Defendants are collectively referred to as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A. Tupperware's Home Products Business

31. Tupperware was founded in 1946 and is well renowned for modernizing food storage through its signature container.

32. Tupperware's products are sold and distributed to nearly 70 countries primarily via its direct selling business model. Direct selling is a business model in which independent contractors' market and sell products and services for a third party. Typically, these independent contractors sell through one-to-one selling, in-home product demonstrations, or online.

**B. Tupperware Was Aware of Problems with Its Internal Control Environment Even Prior to the Class Period from Its Fuller Mexico Cosmetics Unit**

33.    In 2005, Tupperware acquired Fuller Cosmetics beauty products and other direct selling businesses from Sara Lee Corporation.  Fuller Mexico sells cosmetics and fragrances direct to consumers through a sales force whom its website calls "Fullerettes."  In 2017, Fuller Mexico was one of six Tupperware business units with at least $100 million in sales.

34.    In 2018, Fuller Mexico increased its use of, and reliance upon, sales via the shipment of unordered products, without purchase orders ("Non-PO Sales"), through escalation of the frequency, type, and number of products shipped.  This included the initiation of certain Non-PO Sales at the end of financial reporting periods.  At least as early as 2018, the number of Non-PO Sales began to increase and shifted towards products with a higher profit margin, such as perfume, and away from the intended purpose of providing new or promotional products at a discount.

35.    Fuller Mexico employed several strategies in an attempt to meet targets. One example of these aggressive strategies was referred to as a "reactivation order," or "suggested order," whereby Fullerette supervisors identified Fullerettes who were close to becoming inactive in Fuller Mexico's system and used unsolicited "reactivation orders" to try to reengage those Fullerettes in the business and prevent the Fullerettes from becoming inactive in Fuller Mexico's system.  Once a Fullerette was inactive, Fuller Mexico's policy required bad debt for that Fullerette's sales to be reserved at a higher rate.

36.    Another strategy was known as "director sampling" or the "red button," in which Fuller Mexico divisional directors who were at risk of not meeting sales targets could add Non-PO Sales to Fullerettes' orders.  The Non-PO Sales here included products that were not offered at a discount.  Fuller Mexico formalized this practice in 2018 as part of an IT update, with a software tool that made it more efficient for divisional directors to add unordered products to existing Fullerette orders in their division, once approved at higher levels within Fuller Mexico.

37.    Following an inquiry into Fuller Mexico's trial balances for the first quarter of FY2019, Tupperware's internal audit team, as part of a regularly scheduled financial audit of Fuller Mexico in the third quarter of FY2019, conducted a review of certain Non-PO Sales practices at Fuller Mexico in response to elevated returns.  This review led to the commencement in October 2019 of an internal investigation into Fuller Mexico's sales order and returns process.

38.    Ultimately, Tupperware management concluded an adjustment was required for calculating Fuller Mexico's returns reserve, but incorrectly concluded the adjustment was a change in accounting estimate, instead of a correction of an accounting error.

39.    Under Generally Accepted Accounting Principles ("GAAP"), a change in accounting estimate results from new information and should be accounted for prospectively; by contrast, an accounting error may result from mistakes in the application of GAAP or oversight or misuse of facts that existed at the time the

financial statements were prepared and may require restatement of previously issued financial statements.

40.     In the third quarter of FY2019, Tupperware adjusted its reserves by $10 million, as reflected in Tupperware's Quarterly Report on Form 10-Q, filed with the SEC on November 6, 2019.  Tupperware initially attributed the change in accounting estimate determination for calculating Fuller Mexico's returns reserve and other related reserves, including accounts receivable and inventory, to current trends and external factors, such as slower consumer spending.  Tupperware maintained that it was a change based on new information, and therefore did not represent an accounting error.

41.     However, a subsequent investigation uncovered (i) unrealistic sales expectations from Tupperware's Latin America regional leadership, (ii) sales strategies designed by Fuller Mexico management to help meet sales targets, along with promotions or incentives to make the product more attractive to the Fullerettes, and (iii) Fullerettes received more product than they could realistically sell.

42.     As a result of this investigation, Tupperware terminated several members of Fuller Mexico and regional management for "loss of confidence."  In late 2019, Tupperware stopped the use of "director sampling" and directed the phase-out of Non-PO Sales at Fuller Mexico, which was completed in early 2020.

43.     After further concerns were raised internally about Fuller Mexico, Tupperware conducted an additional internal investigation, and determined that Fuller Mexico failed to book various other expenses to show better performance.  In

11

response to these expenses, Tupperware then recorded an adjustment in the fourth quarter of FY2019 of approximately $9 million, of which approximately $2.4 million related to prior periods.

44.    In February 2020, Tupperware disclosed it would delay the filing of its 2019 annual report on Form 10-K as it probed "the accounting for accounts payable and accrued liabilities at its Fuller Mexico beauty business."  Tupperware also estimated that the total impairments in FY2019 related to Fuller Mexico to be approximately $31 million.

45.    Ultimately, on March 12, 2020, Tupperware filed its Annual Report on Form 10-K for FY2019 with the SEC and represented that the investigation into Fuller Mexico was completed, that the impact of out of period adjustments was immaterial, that the system of internal control over financial reporting was effective, and the Company had no material weaknesses.

46.    On March 10, 2021, Tupperware filed its Annual Report on Form 10-K for FY2020 (the "2020 Annual Report") (together, with the 2020 Amended Annual Report, the "2020 Annual Reports") with the SEC and disclosed that it had identified out-of-period misstatements in its previous financial statements stemming from the Mismanagement at Fuller Mexico:

> In 2020, the Company determined that there were immaterial misstatements of its inventory and accrued liabilities within its previously issued annual and interim financial statements resulting from the override of certain internal controls by plant and local management at the Company's Tupperware Mexico plant location. These prior period misstatements were corrected in 2020, and the negative impact on the full year 2020 pre-tax net income was $3.1 million.  Furthermore, the

Company recorded an out of period correction related to tax totaling $2.3 million, decreasing the Company's 2020 net income included on the Consolidated Statements of Income for the year ended December 26, 2020. The Company has determined that these misstatements, and the out of period correction of such amounts, did not result in any previous or current financial statements being materially misstated.

47.     Tupperware further revealed that the Company did not maintain effective internal control over financial reporting as of December 26, 2020 because of material weaknesses that existed with respect to the information technology general controls at Fuller Mexico.

48.     In 2021, Tupperware conducted an additional investigation and determined that it had not accounted for all forms of Non-PO Sales at Fuller Mexico, and that certain amounts related to Non-PO Sales were accounting errors, rather than merely changes in estimates.

49.     Of the original $10 million in adjustments to reserves booked in the third quarter of 2019, Tupperware ultimately determined in 2021 that $5.2 million was an out-of-period error, comprised of understated reserves and overstated inventory. Tupperware simultaneously concluded that revenue associated with the Non-PO Sales had not been recorded in accordance with GAAP.

50.     On August 5, 2021, Tupperware filed an amended Annual Report on Form 10-K for FY2020 (the "2020 Amended Annual Report") with the SEC to disclose various updates stemming from identifying additional material weaknesses in its internal control over financial reporting relating to the override of internal accounting controls by Fuller Mexico management.  The Company also revealed the

existence of a SEC investigation into the Company's internal control over financial reporting at Fuller Mexico and revised the corrections to its prior period misstatements previously raised in the 2020 Annual Report:

> As previously disclosed, the Company, with the help of external legal and accounting resources, has investigated accounting matters at both its Fuller Mexico and Tupperware Mexico locations (collectively, "Mexico operations").

> Subsequent to the original issuance of the Company's Form 10-K for the year ended December 26, 2020, and in connection with preparing for, and responding to, ongoing inquiries from the SEC regarding the Company's Mexico operations, the Company determined that it should not have concluded that certain accounts receivable reserves recognized in 2019 were changes in estimate. New facts, information, and data, that were first understood by management during the second quarter of 2021, resulted in management reassessing such 2019 accounts receivable reserve adjustments and concluding that $5.1 million of such reserve adjustments were not changes in estimate but were instead corrections of misstatements resulting from prior period misconduct by Fuller Mexico employees. In connection with such analysis, the Company also determined that there were other immaterial out-of-period misstatements resulting from misconduct that had previously been considered changes in estimates in 2019.

> Management has evaluated the impact of these newly identified misstatements, both individually and in aggregate with all other previously identified prior period misstatements, and has confirmed its prior conclusion that its previously issued financial statements were not materially misstated.

> However, management did conclude that its disclosure in the Company's 2020 Form 10-K as originally filed on March 10, 2021, regarding the amounts and nature of out-of-period misstatements, were incorrect. Accordingly, the Company is correcting such disclosures, with the corrected disclosures presented as follows:

> During 2021, 2020 and 2019, the Company determined that there were misstatements of its net sales, accounts receivable, inventories, and accrued liabilities within its previously issued annual and interim financial statements, resulting from the override of certain controls by

14

management at the Company's Tupperware Mexico operations and from the misconduct of Fuller Mexico employees. The correction of prior period misstatements related to Tupperware Mexico and Fuller Mexico, as detailed below, resulted from the misconduct at such locations. In addition, the Company has also corrected for other immaterial prior period misstatements as out-of-period corrections in the period of identification, including out-of-period corrections relating to the Company's tax provision, as noted below:

| *(In millions)* | December 26, 2020 | December 28, 2019 | December 29, 2018 | Prior Years |
|---|---|---|---|---|
| **Tupperware Mexico** | ($3.2M) | $2.4M | $0.5M | $0.3M |
| **Fuller Mexico** | ($0.1M) | ($5.8M) | $2.9M | $3.0M |
| **Others** | ($0.9M) | $0.3M | $0.6M | __ |
| **Pre-tax over (under) misstatement** | ($4.2M) | ($3.1M) | $4.0M | $3.3M |
| | | | | |
| **Tax-effect of above misstatements** | $1.3M | $0.9M | ($1.2M) | ($1.0M) |
| **Other income tax misstatements** | ($1.6M) | $3.0M | ($1.4M) | __ |
| **Total tax impact** | ($0.3M) | $3.9M | ($2.6M) | ($1.0M) |
| | | | | |
| **Net income over (under) misstatement** | <u>($4.5M)</u> | <u>$0.8M</u> | <u>$1.4</u> | <u>$2.3M</u> |

51.    Tupperware acknowledged that historically, it was unable to track the volume of Fuller Mexico's Non-PO Sales in a sufficient level of detail and, as a result, was unable to monitor the use of this type of sale, which should have been limited in

nature. Information systems in place at Fuller Mexico were not configured to sufficiently identify, summarize, and report Non-PO Sales.

52. The 2020 Amended Annual Report also disclosed several remediation steps Tupperware was implementing in response to the material weaknesses in the control environment at Fuller Mexico. However, these remedial actions only pertained to the Company's Mexico operations, not the Company's broader internal controls over financial reporting.

53. On February 23, 2022, Tupperware filed its 2021 Annual Report, disclosing further revisions to the out-of-period corrections detailed in the 2020 Annual Reports in connection with the Mismanagement at Fuller Mexico (*see* ¶50) and the Company's income tax provision (*see id.*), and:

> In addition, the Company has also corrected for other immaterial prior period misstatements as out-of-period corrections in the period of identification, including out-of-period corrections relating to deferred tax assets and to the Company's tax provision. Furthermore, in the fourth quarter of 2021, the Company recorded an out-of-period correction of a deferred tax asset related to stock-based compensation, which understated the Company's net income on the Consolidated Statements of Income for the year ended December 25, 2021. The Company has determined that the aforementioned misstatements, and the out-of-period correction of such amounts, did not result in any previous or current financial statements being materially misstated, as noted below:

| *(In millions)* | December 25, 2021 | December 26, 2020 | December 28, 2019 | Prior Years |
|---|---|---|---|---|
| Tupperware Mexico | — | ($3.2M) | $2.4M | $0.8M |
| Fuller Mexico | ($1.6M) | $0.5M | ($5.6M) | $6.8M |
| Others | ($1.0M) | $0.1M | $0.3M | $0.6M |

| | | | | |
|---|---|---|---|---|
| Pre-tax over (under) misstatement | ($2.6M) | ($2.6M) | ($2.9M) | $8.2M |
| | | | | |
| Tax-effect of above misstatements | $0.7M | $1.0 | $0.8M | ($2.5M) |
| Other income tax misstatements | ($4.6M) | ($0.4M) | $3.9M | $1.1M |
| Total tax impact | ($3.9M) | $0.6M | $4.7M | ($1.4M) |
| | | | | |
| Net income over (under) misstatement from continuing operations | ($5.4M) | ($2.4M) | $5.7M | $2.0M |
| Net income over (under) misstatement from discontinued operations | ($1.1M) | $0.4M | ($3.9M) | $4.8M |
| Net income over (under) misstatement | ($6.5M) | ($2.0M) | $1.8M | $6.8M |

54.     The Company further boasted that management had concluded that the remedial steps previously disclosed in its 2020 Amended Annual Report in connection with the Mismanagement at Fuller Mexico "were satisfactorily implemented and have been in place for a sufficient period of time to demonstrate the previously identified material weaknesses have been remediated."

17

55.    Following the 2021 Annual Report, Tupperware continued to disclose various out-of-period adjustments throughout 2022.

56.    On August 4, 2022, Tupperware filed its quarterly report on Form 10-Q for the second quarter of FY2022 (the "2Q2022 Form 10-Q"). In the 2Q2022 Form 10-Q, the Company "recorded out-of-period adjustments which resulted in a net $1.5 million decrease in income from continuing operations in the second quarter ended June 25, 2022 and a $1.3 million decrease in the year-to-date period ended June 25, 2022."

57.    On November 2, 2022, Tupperware filed its quarterly report on Form 10-Q for the third quarter of FY2022 (the "3Q2022 Form 10-Q"). In the 3Q2022 Form 10-Q, the Company disclosed that it had:

> recorded an out-of-period adjustment to income tax expense which resulted in a $1.3 million decrease in income from continuing operations. This error resulted from intercompany costs which were allocated to an incorrect legal entity resulting in a net understatement of income tax expense for the entities. The Company has recorded an aggregate net $2.6 million decrease in income from continuing operations in the year-to-date period ended September 24, 2022, composed of the above-referenced adjustment and three other adjustments identified in the second quarter of 2022.

58.    Despite Tupperware's repeated failings to provide an adequate internal control environment, the Company continued to recklessly issue financial statements to investors.

### C. Tupperware is Sanctioned by the SEC for Internal Control Failures at Fuller Mexico through the Year 2020

59.    On September 29, 2022, the SEC issued a cease-and-desist order (the "SEC Order") for "failing to devise and maintain a sufficient system of internal accounting controls and with failing to maintain accurate books and records from at least 2016 through 2020."

60.    The SEC found that "[Tupperware] violated Section 13(b)(2)(A) of the Exchange Act, which requires reporting companies to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect their transactions and dispositions of their assets."  And that "[Tupperware] violated Section 13(b)(2)(B) of the Exchange Act, which requires all reporting companies to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in accordance with GAAP."

61.    The SEC Order required Tupperware to cease and desist from committing or causing any future violations of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.  Without admitting or denying the SEC's findings, Tupperware agreed to cease and desist from committing or causing any violations and any future violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and to pay a civil monetary penalty of $900,000.

### D. Tupperware Falsely Asserts Internal Controls Are Adequate and Reports False Financial Statements in 2022

62.     During the Class Period, Defendants filed false financial statements and attested in its filings that Tupperware's disclosure controls and procedures were effective at the reasonable assurance level (*see* ¶¶ 98-109).

63.     The reasonable assurance level is a very high level of assurance and communicates to investors "that there is a remote likelihood that material misstatements will not be prevented or detected on a timely basis." SEC Release No. 34-49544 (April 8, 2004).

64.     The Company also communicated to investors that it had designed adequate internal controls. The design of internal controls must be done "by, or under the supervision of, the company's principal executive and principal financial officers, or persons performing similar functions, and effected by the company's board of directors, management, and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.…" SEC Release No. 34-49544 (April 8, 2004).

65.     As stated by the SEC, the failure to design a required control is recognized as a basis for "a significant deficiency, [which] is a control deficiency, or combination of control deficiencies, that adversely affects the company's ability to initiate, authorize, record, process, or report external financial data reliably in accordance with generally accepted accounting principles such that there is more than

a remote likelihood that a misstatement of the company's annual or interim financial statements that is more than inconsequential will not be prevented or detected." SEC Release No. 34-49544 (April 8, 2004).

### E. Tupperware Reveals Material Weaknesses in its Internal Control Over Financial Reporting and Plans to Restate Its Financial Statements

66. On March 1, 2023, before the market opened, Tupperware announced as part of its reporting of its preliminary fourth quarter and full year FY2022 results that it had identified misstatements in prior annual and unaudited interim periods. In particular, these misstatements related to the Company's historical accounting for income taxes. The Company expected to report at least one material weakness in its internal control over its financial reporting, stating the following, in pertinent part, in a press release attached to its current report filed with the SEC on Form 8-K (the "March 1, 2023 Form 8-K"):

> In connection with its year end financial close process, ***the Company has identified misstatements which originated in prior annual and unaudited interim periods, the most significant of which to date relate to the Company's historical accounting for income taxes***. Until the Company has completed its final close process, there is the possibility that additional current and prior period misstatements could be identified. The Company will reflect the correction of the previously issued financial statements in its Annual Report on Form 10-K for the 2022 fiscal year (the "Form 10-K"). The Company is evaluating the method of correction. The preliminary results as of and for the interim and annual periods ended December 25, 2021 have been adjusted to correct for the prior periods misstatements identified through the date of this press release.
>
> ***In addition, the Company concluded that it did not design and maintain effective internal controls related to the accounting for the completeness, occurrence, accuracy, and presentation of the income tax provision and related income tax assets and liabilities***. Accordingly, in the 2022 Form 10-K, the Company will disclose a material weakness in internal control over

21

financial reporting and, as a result, that its disclosure controls and procedures and internal control over financial reporting were not effective as of December 31, 2022.

(Emphasis added).

67.    As a result of the March 1, 2023 Form 8-K revealing Tupperware's lack of internal controls and resulting need to restate its financial results, Tupperware's stock price fell 14.88%, or $.61 cents per share, to close at $3.49 per share.

68.    Two weeks later, on March 16, 2023, after the market closed, the Company filed with the SEC a Late Filing Notice on Form NT 10-K (the "March 16, 2023 Late Filing Notice"), reporting that it was unable to file its 2022 Annual report "by the prescribed due date, without unreasonable effort or expense because it requires additional time to complete the Form 10-K, including the restatement of certain of its previously issued financial statements as described below." The March 16, 2023 Late Filing Notice went on to state, in pertinent part:

> On March 12, 2023, the Audit and Finance Committee of the Board of Directors of the Company, upon recommendation by the management of the Company and in consultation with PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, concluded that the Company's previously issued consolidated financial statements as of and for the years ended December 26, 2020 and December 25, 2021, and the previously issued unaudited interim condensed consolidated financial statements in 2021 and the first three quarters of 2022 (collectively, the "Relevant Periods"), as well as the associated press releases, were materially misstated and should be restated and no longer be relied upon because of the identification of material prior period misstatements.
>
> To correct for such material misstatements, the Company will restate its consolidated financial statements for the years ended December 26, 2020 and December 25, 2021, in connection with the filing of its Form 10-K. Restated financial information as of and for the impacted 2022 and 2021

quarterly and year-to-date periods will be included in the 2022 Form 10-K. The Company will effect the restatement of its 2022 unaudited condensed consolidated quarterly financial statements in connection with the future filings of its Quarterly Reports on Form 10-Q in 2023.

To date, the misstatements that originated in periods prior to 2020 are expected to result in a $23-28 million reduction to the previously reported 2020 beginning retained earnings, with such reduction primarily resulting from misstatements related to income taxes. The Company also currently estimates that the net impact of the prior period misstatements on the restated financial statements will result in an increase in net income from continuing operations for the year ended December 26, 2020, and a decrease in net income from continuing operations for the year ended December 31, 2021 and for the 2022 unaudited interim periods. However, such estimates are preliminary and are subject to change as the Company completes its financial close process, and such changes could be significant.

***The Company also has determined that material weaknesses existed in the Company's internal control over financial reporting as of December 31, 2022*** in the following areas: The Company did not design and maintain effective controls in response to the risks of material misstatement. Specifically, changes to existing controls or the implementation of new controls were not sufficient to respond to changes to the risks of material misstatement in financial reporting. ***This material weakness contributed to the following material weaknesses: (i) accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities; and (ii) completeness, accuracy and presentation of right of use assets and lease liabilities.*** There can be no assurance that additional material weaknesses will not be identified as the Company completes its financial close process.

(Emphasis added).

69.    Also on March 16, 2023, after the market closed, the Company filed with the SEC the March 16, 2023 Form 8-K which supplemented the March 16, 2023 Late Filing Notice. Notably, the March 16, 2023 Form 8-K disclosed that the previous errors identified by Tupperware in 2021 and 2022 were at the heart of the Company's

material weaknesses in its internal control over financial reporting and were material

to the Company's need to effectuate the Restatement of its Previously Issued Financial

Statements.  Accordingly, Tupperware admitted that material weaknesses existed in its

internal control over financial reporting at the time of filing of its 2021 Annual Report,

was the culmination of years of Tupperware struggling to get a handle on its financial

statements, by stating, in pertinent part:

> During the financial year-end close process of Tupperware Brands
> Corporation (the "Company" or the "Registrant"), management, with
> assistance from its tax and accounting advisors, identified several
> adjustments related to prior and current periods that have given rise to a
> restatement of previously issued financial statements.  ***The Company
> believes that the adjustments identified to date are primarily non-cash
> corrections related to income taxes and lease accounting treatment.  As a
> result, the Company expects to delay the filing of its 2022 Annual Return on
> Form 10-K, as further discussed below.***
>
> While preparing the consolidated financial statements for the year ended
> December 31, 2022, the Company identified multiple prior Relevant
> Period misstatements, the most material of which identified to date relate
> to the Company's accounting for income taxes and leases.  ***These newly
> identified misstatements are in addition to other prior Relevant Period
> misstatements previously identified by the Company during 2022, as well as
> misstatements that were previously identified and disclosed in the Company's
> Annual Reports on Form 10-K as of and for the years ended December 25,
> 2021 and December 26, 2020 and in certain 2022 and 2021 Quarterly Reports
> on Form 10-Q.  These previously identified misstatements were initially
> corrected as out of period correcting adjustments in the financial statements
> related to the periods of identification.  After consideration of both newly
> identified and previously identified misstatements, taken both individually
> and in the aggregate, and assessed quantitatively and qualitatively, the
> Company's Audit and Finance Committee, based on management's
> recommendation, concluded that such misstatements were material to the
> Company's previously issued financial statements for the Relevant Periods.***
> The Company will correct for such misstatements by restating its 2021
> and 2020 consolidated financial statements, in connection with the filing
> of its 2022 Annual Report on Form 10-K. Restated financial information

as of and for the impacted 2022 and 2021 quarterly and year-to-date periods will be included in the 2022 Form 10-K. The Company will effectuate the restatement of its 2022 unaudited condensed consolidated quarterly financial statements in connection with the future filings of its Quarterly Reports on Form 10-Q in 2023.

…

Additionally, the Company has determined that material weaknesses exist in its internal control over financial reporting as of December 31, 2022. The Company did not design and maintain effective controls in response to the risks of material misstatement. Specifically, changes to existing controls or the implementation of new controls were not sufficient to respond to changes to the risks of material misstatement in financial reporting. This material weakness contributed to the following material weaknesses related to the:

- Accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities; and

- Accounting for the completeness, accuracy and presentation of right of use assets and lease liabilities.

*As a result, the Company's Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective as of March 26, 2022, June 25, 2022, September 24, 2022, and December 31, 2022.*

(Emphasis added).

70.     Finally, on March 16, 2023, Tupperware issued a press release attached to its current report with the SEC on Form 8-K entitled "Tupperware Brands Corporation Delays Filing of 2022 Form 10-K." In the press release, Defendant Fernandez stated, "[w]hile the delayed filing of our Form 10-K is disappointing, we believe it is important to ensure continued improvement in all aspects of our operations, including financial reporting. These are core elements of our complete

25

turnaround of this iconic company."  Defendant Mariela Matute added, "We have applied lower materiality thresholds and are reviewing our worldwide accounting for income taxes and leases, and believe that the resulting corrections do not change the Company's financial outlook for 2023…We continue to work diligently to finalize our year-end financial close process and immediately start remediation of the identified material weaknesses."

71.    On this news, the price of Tupperware's stock price declined by $0.19 cents a share, or 7.7%, on March 17, 2023, the next trading day, to close at $2.27 per share.

72.    On April 7, 2023, a Stock Market holiday, Tupperware filed a Current Report with the SEC on Form 8-K (the "April 7, 2023 Form 8-K") which disclosed, among other things, that the Company had received a notice from the NYSE indicating that the Company was not in compliance with Section 802.01E of the NYSE Listed Company Manual as a result of "its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2022…with the Securities and Exchange Commission."

73.    The NYSE further informed the Company that it had six months to regain compliance with its listing standards.

74.    The April 7, 2023 Form 8-K further disclosed that the Company expected to file its Annual Report on Form 10-K for FY2022 (the "2022 Annual Report") with the SEC within the next 30 days.

75.    The April 7, 2023 Form 8-K revealed that subsequent to the March 16, 2023 Form 8-K, the Company had "identified additional misstatements in its previously issued annual and unaudited interim financial statements for the Relevant Periods, and there can be no assurance further misstatements will not be identified before the Company files the Form 10-K.  Accordingly, the previous estimates of the net impact of the misstatements on prior periods should no longer be relied upon…As a result of the additional prior period misstatements identified subsequent to the filing of the 8-K on March 16, 2023, the Company is evaluating if there are additional material weaknesses [in its internal control over financial reporting]."  It added that "[a]s a result of the additional prior period misstatements identified subsequent to the filing of the 8-K on March 16, 2023, the Company is evaluating if there are additional material weaknesses [existed in its internal control over financial reporting]."

76.    On May 5, 2023, after the market closed, Tupperware filed with the SEC a Late Filing Notice on Form NT 10-Q (the "May 5, 2023 Late Filing Notice"), reporting that it was unable to timely file its Quarterly Report on Form 10-Q for the first quarter of FY2023 "by the prescribed due date…[d]ue to the time and effort required to complete the consolidated financial statements for the Annual Report on Form 10-K for the year ended December 31, 2022."

77.    The May 5, 2023 Late Filing Notice added that "[a]s previously disclosed on its Form 8-K on April 7, 2023, the Company is continuing its restatement of previously issued financial statements and the financial statement close process for the year-end December 31, 2022. *Since the Form 8-K filing, the Company has identified*

***additional prior period misstatements and additional material weaknesses in internal control over financial reporting."*** (Emphasis added).

78.   The May 5, 2023 Late Filing Notice noted that "[t]he Company is endeavoring to complete its financial close process and Form 10-Q filing as promptly as possible after filing the Form 10-K."

79.   On May 30, 2023, after the market closed, the Company filed with the SEC a Current Report on Form 8-K (the "May 30, 2023 Form 8-K") which disclosed, among other things, that "[t]he Company currently expects to file with the Securities and Exchange Commission (the "SEC") its Form 10-K by mid-July 2023, and its Form 10-Q by early September 2023..."

80.   On July 7, 2023, after the market closed, Tupperware filed with the SEC a Current Report on Form 8-K (the "July 7, 2023 Form 8-K") which disclosed, among other things, material weaknesses that existed in its internal control over financial reporting as of December 31, 2022 by stating, in pertinent part:

> As previously disclosed in the Company's Current Report on Form 8-K filed on March 16, 2023 and subsequent Forms 8-K, the Company disclosed that it had determined that as of December 31, 2022, multiple material weaknesses existed in its internal control over financial reporting, and that its work to evaluate its control environment was ongoing. At present, the Company has determined that it did not design and maintain an effective control environment commensurate with its financial reporting requirements. Specifically, the Company determined that: (a) it did not maintain a sufficient complement of personnel with an appropriate degree of internal controls and accounting knowledge, experience, and training commensurate with its accounting and financial reporting requirements; and (b) the Company did not design and maintain effective controls in response to the risks of material misstatement, and that specifically, changes to existing controls or the implementation of new controls were not sufficient to respond to changes

to the risks of material misstatement in financial reporting. The Company believes that these two material weaknesses contributed to the following additional material weaknesses:

- The Company did not design and maintain effective controls related to the accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities.

- The Company did not design and maintain effective controls related to the accounting for the completeness, accuracy and presentation of right of use assets and lease liabilities.

- ***The Company did not design and maintain effective controls related to the presentation of gains/losses related to intercompany loans.***

- ***The Company did not design and maintain effective controls related to the accounting for the valuation of goodwill.***

- ***The Company did not design and maintain effective controls related to account reconciliations to support the completeness, accuracy and presentation of the consolidated financial statements.***

(Emphasis added).

81.    The July 7, 2023 Form 8-K also disclosed that Tupperware's filing of its 2022 Annual Report, including the Restatement of its Previously Issued Financial Statements, and its Quarterly Report on Form 10-Q for the first quarter of FY2023 was further delayed till August 2023 and September 2023, respectively.

82.    On August 3, 2023, after the market closed, the Company filed with the SEC a Current Report on Form 8-K which disclosed, among other things, that its filing of its 2022 Annual Report, including the Restatement of its Previously Issued Financial Statements, and its Quarterly Report on Form 10-Q for First Quarter of

29

FY2023 were further delayed till late August 2023 and late September 2023, respectively.

83.    On August 25, 2023, after the market closed, the Company filed with the SEC a Current Report on Form 8-K which disclosed, among other things, that its filing of its 2022 Annual Report, including the Restatement of its Previously Issued Financial Statements, and its Quarterly Reports on Form 10-Q for the first and second quarters of FY2023 were further delayed till September 2023 and the fourth quarter of 2023, respectively.

84.    On September 18, 2023, after the market closed, the Company filed with the SEC a Current Report on Form 8-K (the "September 18, 2023 Form 8-K") which disclosed, among other things, that its filing of its Annual Report on Form 10-K for fiscal year 2022, including the Restatement of its Previously Issued Financial Statements, was further delayed till mid-October 2023.

85.    The September 18, 2023 Form 8-K further disclosed an additional material weaknesses in its internal control over financial reporting, "[t]he Company did not design and maintain effective controls related to the presentation and review of the Consolidated Statement of Cash Flows."

### F.  Tupperware Restates Its Financial Results

86.    On October 13, 2023, after the market closed, Tupperware filed its 2022 Annual Report with the SEC, containing the Restatement of its Previously Issued Financial Statements.  Specifically, the 2022 Annual Report restated the consolidated financial statements for FYs 2020-2021 and the unaudited interim condensed

consolidated financial information for the first three quarters of FY2022 and all quarters of FY2021.

87.    The 2022 Annual Report added that restatement for the first three quarters of FY2022 was not complete and that "[t]he Company will effectuate restatement of the unaudited interim condensed consolidated financial information for the first three quarters of 2022 as part of filing of the 2023 interim Forms."

88.    Among other things, the 2022 Annual Report contained hundreds of line-item adjustments, spanning from 2019 through the third quarter of FY2022, restating tens of millions of dollars to the Company's accounting of income taxes, including the income tax provision and related income tax assets and liabilities, right of use assets and lease liabilities, gains/losses related to intercompany loans, valuation of goodwill, and net impacts to the Company's previously reported income from continuing operations and diluted earnings per share from continuing operations.

89.    Concerning Company's accounting for its provision for income taxes, the 2022 Annual Report disclosed the following annual and quarterly errors:

a. A $1.9 million understatement and an $9.0 million overstatement of the Provision for income taxes for the years ended December 25, 2021 and December 26, 2020, respectively, related to the recognition of tax benefits from unrecorded gains (losses) on foreign currency remeasurement at a foreign subsidiary.

b. A $2.5 million and a $0.3 million understatement of the Provision for income taxes for the years ended December 25, 2021 and December 26, 2020, respectively, due to misstatements of pre-tax intercompany costs and profits between foreign jurisdictions. A portion of the misstatements, $0.8 million and $0.7 million, were previously identified and initially disclosed and corrected for as an out of period adjustment during the years ended December 25, 2021 and December 26, 2020, respectively.

31

c. A $0.4 million, a $0.3 million, and a cumulative $11.4 million understatement of the Provision for income taxes for the years ended December 25, 2021, December 26, 2020, and for years prior to 2020, respectively, resulting from the incorrect capitalization of research and development costs.

d. A $2.5 million overstatement of Income taxes payable, a $0.7 million overstatement of Provision for income taxes, and a $1.9 million understatement of income within Other comprehensive income (loss) for the year ended December 25, 2021, and a $6.2 million overstatement of Income taxes payable within Accrued liabilities and an understatement of Retained earnings cumulatively for years prior to 2020. Additionally, a misstatement within Other comprehensive income (loss) for the year ended December 25, 2021 resulted in a $3.7 million increase to Pension and other post-retirement benefit, net of tax with a corresponding decrease to Foreign currency translation adjustments, net of tax.

e. A $2.1 million understatement of the Provision for income taxes for the year ended December 25, 2021 and an overstatement of $3.1 million of the Provision for income taxes cumulatively for years prior to 2020, due to various incorrect deferred tax balances.

f. A $1.1 million correction for the overstatement of a deferred tax asset related to stock-based compensation, which understated the Provision for income taxes for the year ended December 26, 2020 and by $3.5 million cumulatively for years prior to 2020. This previously identified misstatement was initially disclosed and corrected for as an out of period adjustment during the year ended December 25, 2021.

g. Other misstatements, which understated the Provision for income taxes by $2.3 million and understated foreign currency exchange income within Other comprehensive income (loss) by $2.0 million cumulatively for years prior to 2020. The understatement of the Provision for income taxes by $1.6 million for years prior to 2020 was a previously identified misstatement that was initially disclosed and corrected for as an out of period adjustment during the year ended December 26, 2020.

…

a. A $2.3 million and $1.9 million understatement of the Provision for income taxes for the three months ended September 24, 2022 and December 25, 2021, respectively, related to the recognition of tax benefits

from unrecorded gains (losses) on foreign currency remeasurement at a foreign subsidiary.

b. A $1.5 million, $3.2 million, and $(2.5) million, over-/(under)statement of the Provision for income taxes for the three months ended September 24, 2022, June 25, 2022, December 25, 2021, respectively, due to misstatements of pre-tax intercompany costs and profits between foreign jurisdictions.

c. A $0.1 million understatement of the Provision for income taxes for each of the quarters ended December 25, 2021, September 25, 2021, June 26, 2021, and March 27, 2021, resulting from the incorrect capitalization of research and development costs.

d. A $1.8 million, $1.2 million, and $1.4 million overstatement of Income taxes payable within Accrued liabilities for the three months ended June 25, 2022, December 25, 2021, and September 25, 2021, respectively, and a $1.6 million, $0.5 million, and $1.4 million understatement of income within Other comprehensive income (loss) for the three months ended June 25, 2022, December 25, 2021, and September 25, 2021, respectively, resulting from incomplete tax payable rollforwards.

e. A $2.1 million understatement of the Provision for income taxes for the three months ended December 25, 2021, due to various incorrect deferred tax balances.

f. A $4.6 million reversal of an out of period adjustment initially recorded during the three months ended December 25, 2021 to correct for the overstatement of a deferred tax asset related to stock-based compensation, which understated the Provision for income taxes by $1.1 million for the year ended December 26, 2020 and by $3.5 million cumulatively for years prior to 2020.

g. Other misstatements, which overstated the Retained earnings by $2.3 million and understated foreign currency exchange income within Accumulated other comprehensive loss by $2.0 million cumulatively for years prior to 2020. The overstatement of the Retained earnings by $1.6 million for years prior to 2020 was a previously identified misstatement that was initially disclosed and corrected for as an out of period adjustment during the year ended December 26, 2020; the remaining overstatement of Retained Earnings of $0.7 million for years prior to 2020 was not previously corrected for as an out of period adjustment.

### G. Tupperware Clarifies How It Operated Without Internal Controls

90.    The 2022 Annual Report stated that Tupperware's management, including Individual Defendants Fernandez and Matute, conducted an evaluation of the effectiveness of the Company's internal control over financial accounting.  Based on this evaluation, the Company's management concluded that, as of December 31, 2022, the Company's internal control over financial reporting was not effective because of certain material weaknesses.  Specifically, Tupperware's management identified the following deficiencies in internal control over financial reporting as of December 31, 2022:

> Management, including the Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2022 using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in "Internal Control—Integrated Framework" (2013). Management identified material weaknesses in internal control over financial reporting as of December 31, 2022.

> The Company did not design and maintain an effective control environment commensurate with its financial reporting requirements. Specifically, it did not maintain a sufficient complement of personnel with an appropriate degree of internal controls and accounting knowledge, experience, and training commensurate with its accounting and financial reporting requirements. The Company did not design and maintain effective controls in response to the risks of material misstatement. Specifically, changes to existing controls or the implementation of new controls were not sufficient to respond to changes to the risks of material misstatement in financial reporting. These material weaknesses contributed to the following material weaknesses:

- The Company did not design and maintain effective controls related to the accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities.

- The Company did not design and maintain effective controls related to the accounting for the completeness, accuracy and presentation of right of use assets and lease liabilities.

- The Company did not design and maintain effective controls related to the monitoring of the designation of intercompany loans as being of long term in nature and the related impact to the accounting for foreign currency transaction gains and losses and translation adjustments.

- The Company did not design and maintain effective controls related to the accounting for the valuation of goodwill.

- The Company did not design and maintain effective controls related to account reconciliations to support the completeness, accuracy and presentation of the Consolidated Financial Statements.

- The Company did not design and maintain effective controls related to the review of the Consolidated Statement of Cash Flows.

These material weaknesses resulted in the restatement of the Company's annual Consolidated Financial Statements in 2021 and 2020 and each of its interim Condensed Consolidated Financial Statements in 2022 and 2021 as included in this Annual Report on Form 10-K. Additionally, the material weaknesses could result in misstatements to the Company's accounts and disclosures that would result in a material misstatement of the annual or interim Consolidated Financial Statements that would not be prevented or detected. Based on these material weaknesses, management concluded that as of December 31, 2022, the Company's internal control over financial reporting was not effective.

**H. Tupperware's Accounting Leadership Undergoes Major Upheaval**

91.    In the weeks leading up to Tupperware finalizing its 2022 Annual Report containing the Restatement of its Previously Issued Financial Statements, several of the Company's senior accounting officials left the Company.

92.    In or around September 2023, Megan Douglas, Vice President, Internal Audit, resigned from her position at Tupperware.

93.     On September 12, 2023, Madeline Otero, Senior Vice President & Chief Accounting Officer, informed Tupperware of her intention to resign from her position, effective following the filing of the Company's 2022 Annual Report.  Otero had served as the Company's Principal Accounting Officer since at least March 12, 2020 and had signed off on all of Tupperware's filed annual and quarterly reports on Form 10-K and 10-Q since November 2019, including all of the statements at issue during the Class Period.

94.     In or around October 2023, Patrick Baumann, Vice President, Treasurer, resigned from his position at Tupperware.

### I.  Tupperware Terminates Its CEO

95.     On October 16, 2023, the first business day following the filing of the 2022 Annual Report, Tupperware's board of directors terminated the employment of Defendant Fernandez as the Company's President and CEO.

96.     That same day, Tupperware's board of directors also announced the appointment of Laurie Ann Goldmanas as the Company's new President and CEO, effective October 17, 2023.

### J.  Tupperware's Independent Registered Public Accountant Resigns After Almost 30 Years of Service

97.     On October 24, 2023, less than two weeks after the filing of the 2022 Annual Report, PricewaterhouseCoopers International Limited (PWC) informed Tupperware that PwC was declining to stand for re-appointment as the Company's

36

registered public accounting firm for the integrated audit of the fiscal year ending December 30, 2023. PwC had served as the Company's auditor for 28 years.

## V.    DEFENDANTS' FALSE STATEMENTS AND OMISSIONS OF MATERIAL FACTS MADE WITH SCIENTER

### A. The February 23, 2022 False and Misleading Statements

98.    On February 23, 2022, Tupperware filed its 2021 Annual Report, which was signed by Individual Defendants Fernandez and Harris.

99.    The 2021 Annual Report falsely claimed that "the Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports…[is] communicated to the Company's management, including the Chief Executive Office and Chief Financial Officer…."  In particular, the 2021 Annual Report stated, in relevant part:

> As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. As of December 25, 2021, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that **the disclosure controls and procedures were effective at the reasonable assurance level**.
>
> …
>
> Under the supervision of and with the participation of the Company's management, the effectiveness of our internal control over financial reporting as of December 25, 2021 was assessed using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control—Integrated Framework (2013).

Based on that evaluation, management, **under the supervision of the Chief Executive Officer and Chief Financial Officer, have concluded that as of December 25, 2021, the Company's internal control over financial reporting was effective**.

(Emphasis added).

100.    The representations that the Company's disclosure controls and procedures were effective were materially false and misleading when made because Defendants knew or recklessly disregarded that deficiencies existed in the Company's internal control over financial reporting, including its accounting of its income tax provision. *See* ¶¶ 110-145. The Company admitted that substantial portions of its financial reporting were materially false when restating its financial results. *See* ¶¶ 86-89. Defendants also admitted that there were material weaknesses in its internal control over financial reporting as it "did not design and maintain an effective control environment commensurate with its financial reporting requirements." Tupperware "did not maintain a sufficient complement of personnel with an appropriate degree of internal controls and accounting knowledge, experience, and training commensurate with its accounting and financial reporting requirements" and "did not design and maintain effective controls in response to the risks of material misstatement." *See* ¶ 90. This resulted in material weaknesses in the Company's internal controls related to: accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities, accounting for the completeness, accuracy and presentation of right of use assets and lease liabilities, monitoring of the designation of intercompany loans as being of long

term in nature and the related impact to the accounting for foreign currency transaction gains and losses and translation adjustments, accounting for the valuation of goodwill, account reconciliations to support the completeness, accuracy and presentation of the consolidated financial statements, and the review of the consolidated statement of cash flows. *Id.* Defendant Matute admitted that Defendants used artificially high materiality standards that hid material misstatements, which were in part previously recorded by Defendants as mere corrections to out-of-period misstatements, preventing disclosure to investors (¶ 70); the internal control environment was so defective that the Company ultimately restated hundreds of line items spanning years of its financial statements (¶ 88); and, as a result of the foregoing, the Company filed unreliable financial statements and delayed filing its 2022 Annual Report. (¶¶ 33-97, 110-128).

### B. The May 5, 2022 False and Misleading Statements

101.    On May 5, 2022, Tupperware filed its Quarterly Report on Form 10-Q for the first quarter of FY2022 (the "1Q2022 Form 10-Q") with the SEC, which was signed by Individual Defendants Fernandez and Harris.

102.    The 1Q2022 Form 10-Q falsely claimed that "the Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports…[is] communicated to the Company's management, including the Chief Executive Office and Chief Financial Officer...."  In particular, the 1Q2022 Form 10-Q stated, in relevant part:

> As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. As of March 26, 2022, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that **the disclosure controls and procedures were effective at the reasonable assurance level**.

(Emphasis added).

103.    The representations that the Company's disclosure controls and procedures were effective were materially false and misleading when made because Defendants knew or recklessly disregarded that deficiencies existed in the Company's internal control over financial reporting, including its accounting of its income tax provision.  *See* ¶¶ 110-145.  The Company later admitted that substantial portions of its financial reporting were materially false when restating its financial results.  *See* ¶¶ 86-89.  Defendants also admitted that there were material weaknesses in its internal control over financial reporting as it "did not design and maintain an effective control environment commensurate with its financial reporting requirements."  Tupperware "did not maintain a sufficient complement of personnel with an appropriate degree of internal controls and accounting knowledge, experience, and training commensurate with its accounting and financial reporting requirements" and "did not design and maintain effective controls in response to the risks of material misstatement."  *See* ¶ 90.  This resulted in material weaknesses in the Company's internal controls related to: accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities, accounting for the completeness, accuracy and presentation of right of use assets and

lease liabilities, monitoring of the designation of intercompany loans as being of long term in nature and the related impact to the accounting for foreign currency transaction gains and losses and translation adjustments, accounting for the valuation of goodwill, account reconciliations to support the completeness, accuracy and presentation of the consolidated financial statements, and the review of the consolidated statement of cash flows. *Id.* Defendant Matute admitted that Defendants used artificially high materiality standards that hid material misstatements, which were in part previously recorded by Defendants as mere corrections to out-of-period misstatements, preventing disclosure to investors (¶ 70); the internal control environment was so defective that the Company ultimately restated hundreds of line items spanning years of its financial statements (¶ 88); and, as a result of the foregoing, the Company filed unreliable financial statements and delayed filing its 2022 Annual Report. (¶¶ 33-97, 110-128).

**C. The August 4, 2022 False and Misleading Statements**

104.    On August 4, 2022, Tupperware filed its 2Q2022 Form 10-Q with the SEC, which was signed by Individual Defendants Fernandez and Matute.

105.    The 2Q2022 Form 10-Q falsely claimed that "the Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports…[is] communicated to the Company's management, including the Chief Executive Office and Chief Financial Officer...."  In particular, the 2Q2022 Form 10-Q stated, in relevant part:

As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. As of June 25, 2022, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that **the disclosure controls and procedures were effective at the reasonable assurance level**.

(Emphasis added).

106.   The representations that the Company's disclosure controls and procedures were effective were materially false and misleading when made because Defendants knew or recklessly disregarded that deficiencies existed in the Company's internal control over financial reporting, including its accounting of its income tax provision. *See* ¶¶ 110-145. The Company later admitted that substantial portions of its financial reporting were materially false when restating its financial results. *See* ¶¶ 86-89. Defendants also admitted that there were material weaknesses in its internal control over financial reporting as it "did not design and maintain an effective control environment commensurate with its financial reporting requirements." Tupperware "did not maintain a sufficient complement of personnel with an appropriate degree of internal controls and accounting knowledge, experience, and training commensurate with its accounting and financial reporting requirements" and "did not design and maintain effective controls in response to the risks of material misstatement." *See* ¶ 90. This resulted in material weaknesses in the Company's internal controls related to: accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities, accounting for the completeness, accuracy and presentation of right of use assets and

lease liabilities, monitoring of the designation of intercompany loans as being of long term in nature and the related impact to the accounting for foreign currency transaction gains and losses and translation adjustments, accounting for the valuation of goodwill, account reconciliations to support the completeness, accuracy and presentation of the consolidated financial statements, and the review of the consolidated statement of cash flows. *Id.* Defendant Matute admitted that Defendants used artificially high materiality standards that hid material misstatements, which were in part previously recorded by Defendants as mere corrections to out-of-period misstatements, preventing disclosure to investors (¶ 70); the internal control environment was so defective that the Company ultimately restated hundreds of line items spanning years of its financial statements (¶ 88); and, as a result of the foregoing, the Company filed unreliable financial statements and delayed filing its 2022 Annual Report. (¶¶ 33-97, 110-128).

### D. The November 2, 2022 False and Misleading Statements

107.    On November 2, 2022, Tupperware filed its 3Q2022 Form 10-Q with the SEC, which was signed by Individual Defendants Fernandez and Matute.

108.    The 3Q2022 Form 10-Q Q falsely claimed that "the Company maintains disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15(d)-15(e)) that are designed to ensure that information required to be disclosed in the Company's reports…[is] communicated to the Company's management, including the Chief Executive Office and Chief Financial Officer…."  In particular, the 3Q2022 Form 10-Q stated, in relevant part:

> As of the end of the period covered by this report, management, under the supervision of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures. As of September 24, 2022, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that **the disclosure controls and procedures were effective at the reasonable assurance level**.

(Emphasis added).

109.    The representations that the Company's disclosure controls and procedures were effective were materially false and misleading when made because Defendants knew or recklessly disregarded that deficiencies existed in the Company's internal control over financial reporting, including its accounting of its income tax provision.  *See* ¶¶ 110-145.  The Company later admitted that substantial portions of its financial reporting were materially false when restating its financial results.  *See* ¶¶ 86-89.  Defendants also admitted that there were material weaknesses in its internal control over financial reporting as it "did not design and maintain an effective control environment commensurate with its financial reporting requirements."  Tupperware "did not maintain a sufficient complement of personnel with an appropriate degree of internal controls and accounting knowledge, experience, and training commensurate with its accounting and financial reporting requirements" and "did not design and maintain effective controls in response to the risks of material misstatement."  *See* ¶ 90.  This resulted in material weaknesses in the Company's internal controls related to: accounting for the completeness, occurrence, accuracy and presentation of income taxes, including the income tax provision and related income tax assets and liabilities, accounting for the completeness, accuracy and presentation of right of use assets and

44

lease liabilities, monitoring of the designation of intercompany loans as being of long term in nature and the related impact to the accounting for foreign currency transaction gains and losses and translation adjustments, accounting for the valuation of goodwill, account reconciliations to support the completeness, accuracy and presentation of the consolidated financial statements, and the review of the consolidated statement of cash flows. *Id.* Defendant Matute admitted that Defendants used artificially high materiality standards that hid material misstatements, which were in part previously recorded by Defendants as mere corrections to out-of-period misstatements, preventing disclosure to investors (¶ 70); the internal control environment was so defective that the Company ultimately restated hundreds of line items spanning years of its financial statements (¶ 88); and, as a result of the foregoing, the Company filed unreliable financial statements and delayed filing its 2022 Annual Report. (¶¶ 33-97, 110-128).

## VI.    ADDITIONAL ALLEGATIONS OF SCIENTER

110.    As alleged herein, Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company or in their own name during the Class Period were materially false and misleading.

111.    Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Tupperware's accounting for its income tax,

including but not limited to deficiencies in the Company's internal control over financial reporting, their control over, or receipt or modification of Tupperware's allegedly materially misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

112.    Defendants knew or recklessly disregarded the false and misleading nature of the information that they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge or complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including the Individual Defendants.

113.    Defendants, because of their positions within Tupperware, made or controlled the contents of the Company's public statements during the Class Period. The Individual Defendants were provided with or had access to the information alleged herein to be false or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not be disclosed to and were being concealed from the public and that the positive representations that were being made were materially false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Tupperware's corporate statements and are therefore responsible and liable for the representations contained therein.

**A. At the latest, Defendants Knew or Should Have Been Aware of the Material Weaknesses in Tupperware's Internal Control Over Financial Reporting by February 23, 2022**

114.   On August 5, 2021, as a result of Tupperware failing to devise and maintain a sufficient system of internal accounting controls and to maintain accurate books and records in connection with Fuller Mexico, the Company disclosed in its 2020 Amended Annual Report that, from 2016 through the first quarter of 2020, it had misstated its net sales, accounts receivable, inventories, and accrued liabilities in its annual and interim financial statements.   Tupperware disclosed that approximately $5.2 million of reserves, including those related to Non-PO Sales, were erroneously recorded and should have been reflected in prior periods.   Additionally, Tupperware also disclosed that approximately $2.4 million of other accruals were erroneously excluded from prior periods.   Tupperware further revealed that it had corrected for other prior period misstatements relating to the Company's income tax provision, totaling $6 million in misstatements. These misstatements affected Tupperware's bottom line, including lowering the Company's net income by $4.5 million in FY2020, a substantial amount as the Company only reported $112.2 million in net income for that year.   These latest findings were the culmination of almost two years of investigations and repeated failed attempts by Tupperware to quantity the Mismanagement at Fuller Mexico, including incorrect corrections to misstatements in the 2020 Annual Report.

115.   Yet, on February 23, 2022, Tupperware filed its 2021 Annual Report, disclosing revisions to corrections to out-of-period misstatements previously disclosed

in the 2020 Amended Annual Report. These misstatements stemmed from the Mismanagement at Fuller Mexico as well as the Company's income tax provision. The 2021 Annual Report also identified additional misstatements in FY2021. As demonstrated below, almost all of the 2020 Amended Annual Report's original corrections to the out-of-period misstatements stemming from the Mismanagement at Fuller Mexico were further revised.

| *(In millions)* | December 25, 2021 | December 26, 2020 | December 28, 2019 | Prior Years |
|---|---|---|---|---|
| Tupperware Mexico | — | ($3.2M) | $2.4M | $0.8M |
| Fuller Mexico | ($1.6M) | $0.5M **($0.1M)** | ($5.6M) **($5.8M)** | $6.8M **$5.9M**[1] |
| Others | ($1.0M) | $0.1M **($0.9M)** | $0.3M | $0.6M |
| Pre-tax over (under) misstatement | ($2.6M) | ($2.6M) **($4.2M)** | ($2.9M) **($3.1M)** | $8.2M **$7.3M** |
| | | | | |
| Tax-effect of above misstatements | $0.7M | $1.0 **($1.3M)** | $0.8M **($0.9M)** | ($2.5M) |
| Other income tax misstatements | ($4.6M) | ($0.4M) **($1.6M)** | $3.9M **$3.0M** | $1.1M **($1.4M)** |
| Total tax impact | ($3.9M) | $0.6M **($0.3M)** | $4.7M **$3.9M** | ($1.4M) **($3.6M)** |

---

[1] The bolded figures represent the original corrections to the out-of-period misstatements as detailed in the 2020 Amended Annual Report. *See* ¶ 50.

| | | | |
|---|---|---|---|
| Net income over (under) misstatement from continuing operations | ($5.4M) | ($2.4M) **Not previously reported** | $5.7M **Not previously reported** | $2.0M **Not previously reported** |
| Net income over (under) misstatement from discontinued operations | ($1.1M) | $0.4M **Not previously reported** | ($3.9M) **Not previously reported** | $4.8M **Not previously reported** |
| | | | | |
| Net income over (under) misstatement | ($6.5M) | ($2.0M) **($4.5M)** | $1.8M **$0.8M** | $6.8M **($3.7M)** |

116.     Additionally, the 2021 Annual Report revised all of 2020 Amended Annual Report's corrections to Tupperware's income tax provision, including increasing the reduction to the Company's income tax provision for FY2020 by 300%. The 2021 Annual Report also revealed further misstatements to Tupperware's income tax provision in FY2021.

117.     In light of the Tupperware's repeated failures to correct out-of-period misstatements and accurately report its financial results, at the time of filing the 2021 Annual Report, Defendants knew or recklessly ignored that the Company had deficiencies in its internal control over financial reporting, particularly in connection with the accounting of its income tax provision—a critical aspect of the Company's Restatement of its Previously Issued Financial Statements.   Defendants further confirmed this fact in the March 16, 2023 Form 8-K in which it disclosed that its

previously reckless accounting was the driving force behind its need to effectuate the Restatement of its Previously Issued Financial Statements.

### B. Defendants' SOX Certifications Are Indicative of Scienter

118.    Defendants repeatedly represented to investors that Tupperware's financial statements were adequate and that they were complying with their obligations under the Sarbanes-Oxley Act ("SOX"). Defendants made these representations notwithstanding the fact that they knew that Tupperware was unable to maintain effective internal control over its financial reporting.

119.    Defendants represented that "the Chief Executive Officer and Chief Financial Officer have concluded that the disclosure controls and procedures were effective at the reasonable assurance level."

120.    The fact that the Defendants evaluated the effectiveness of the design and operation of Tupperware's disclosure controls and procedures, along with their knowledge of other red flags described herein, is highly indicative that they reviewed the Company's internal controls over its financial reporting at issue but recklessly ignored them.

121.    Accordingly, Defendants' disclosures that they regularly reviewed and evaluated the effectiveness of the design and operation of Tupperware's disclosure controls and procedures yet needed to effectuate the Restatement of its Previously Issued Financial Statements due to material weaknesses in its internal control over its financial reporting indicates that Defendants acted with scienter.

**C.** **Defendants' Scienter Is Supported by Suspiciously Timed Turnover in Tupperware's CEO, Senior Financial and Accounting Management, and Registered Public Accounting Firm**

122.    In or around September 2023, as Tupperware was finalizing the filing of its long-delayed 2022 Annual Report containing the Restatement of its Previously Issued Financial Statements, Megan Douglas, Vice President, Internal Audit, resigned from her position at Tupperware.

123.    On September 12, 2023, Madeline Otero, Senior Vice President & Chief Accounting Officer, informed Tupperware of her intention to resign from her position, effective following the filing of the Company's 2022 Annual Report.

124.    In or around October 2023, Patrick Baumann, Vice President, Treasurer, resigned from his position at Tupperware.

125.    On October 16, 2023, the first business day following the filing of the 2022 Annual Report, Tupperware's board of directors terminated the employment of Defendant Fernandez as the Company's President and Chief Executive Officer.

126.    On October 24, 2023, less than two weeks after the filing of the 2022 Annual Report, PwC informed Tupperware that PwC was declining to stand for re-appointment as the Company's registered public accounting firm for the integrated audit of the fiscal year ending December 30, 2023 after serving as the Company's auditor for 28 years.

127.    The suspicious timing of the termination of Tupperware's CEO, immense changes to the Company's senior accounting and financial personnel, and the resignation of the Company's accountant after almost 30 years of service, support

a strong inference of scienter. All of these resignations or terminations occurred within weeks of the Company's filing of the 2022 Annual Report containing the Restatement of its Previously Issued Financial Statements.

128.    Within 10 days of the filing of the 2022 Annual Report, almost all the individuals and the registered public accounting firm that signed off on Tupperware's Class Period misrepresentations were no longer employed or retained by the Company.

## VII.    LOSS CAUSATION/ECONOMIC LOSS

129.    During the Class Period, as detailed herein, Tupperware's publicly traded securities were artificially inflated due to Defendants' false and misleading public statements. When Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Tupperware's publicly traded securities fell as the prior artificial inflation came out.

130.    As a result of their purchases of Tupperware's publicly traded securities during the Class Period, Lead Plaintiffs and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

131.    The declines in the price of Tupperware's publicly traded securities after the corrective disclosures on March 1, 2023 and March 16, 2023 were a direct result of Defendants' misrepresentations and omissions being revealed to the market.

132.    Defendants' materially false and misleading statements relate to Tupperware's effectiveness of its internal control over its financial reporting and the misstatements to its financial reporting stemming from them.

133.   The corrective disclosure on March 1, 2023 revealed that Tupperware had identified misstatements in prior annual and unaudited interim periods related to the Company's historical accounting for income taxes and would be restating certain of its financial results.   The Company further divulged that "it did not design and maintain effective internal controls related to the accounting for the completeness, occurrence, accuracy, and presentation of the income tax provision and related income tax assets and liabilities" and, accordingly, would disclose a material weakness in internal control over financial reporting in its 2022 Annual Report.

134.   Over the course of that day, Tupperware's stock fell $.61 cents per share, or 14.88%, to close at $3.49 per share.

135.   The corrective disclosure on March 16, 2023 revealed that Tupperware would not be timely filing its 2022 Annual Report because of the time and effort needed for the Company to restate its consolidated financial statements for FYs 2020-2021 and the previously issued unaudited interim condensed consolidated financial statements in FY2021 and the first three quarters of FY2022.   The Company also disclosed that it uncovered additional material weakness in its internal control over financial reporting relating to right of use assets and lease liabilities.   Finally, the Company provided estimates of the net impact of the misstatements on its prior reporting periods.

136.   During the next trading day, on March 17, 2023, Tupperware's stock price declined by $0.19 cents a share, or 7.7%, to close at $2.27 per share.

137.    The dramatic decline in the price of Tupperware securities after the corrective disclosures on March 1, 2023 and March 16, 2023 were direct results of Defendants' misrepresentations and omissions being revealed to investors and the market.

138.    The adverse consequences of the Company's disclosures, including the decline in Tupperware's stock price, and the adverse impact of those circumstances on the Company's business going forward, were entirely foreseeable to Defendants at all relevant times.  Defendants' conduct, as alleged herein, proximately caused foreseeable losses and damages to Lead Plaintiffs and members of the Class.

139.    The timing and magnitude of the price decline in Tupperware's stock price negate any inference that the loss suffered by Lead Plaintiffs and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' statements.  As set forth above, the Company's failure to disclose critical aspects concerning maintaining effective control over its financial reporting and the associated accounting misclassifications were not only material but also triggered foreseeable and grave consequences for the Company.

140.    Thus, the economic loss, *i.e.*, damages suffered by Lead Plaintiffs and the other Class members, was a direct, foreseeable, and proximate result of the fraudulent scheme being revealed to investors and to the market.

141.    The market's reaction following Tupperware's false and misleading statements also shows that investors were misled by the Company's misstatements.

142.    On February 23, 2022, following the disclosure of the Company's materially misleading FY2021 results, Tupperware's stock price increased by $0.30 to close at $16.35 on February 24, 2022.

143.    On May 5, 2022, following the disclosure of the Company's materially misleading 1Q2022 financial results, Tupperware's stock price dropped $1.55 to close at $10.60 per share on May 5, 2022, buoyed from a steeper decline by Defendants' false and misleading statements to the market.

144.    On August 4, 2022, following the disclosure of the Company's materially misleading 2Q2022 financial results, Tupperware's stock price increased by $1.39 to close at $10.92 per share on August 4, 2022.

145.    On November 2, 2022, following the disclosure of the Company's materially misleading 3Q2022 financial results, Tupperware's stock price dropped $0.11 to close at $4.40 per share on November 3, 2022, the next trading day, buoyed from a steeper decline by Defendants' false and misleading statements to the market.

## VIII.   INAPPLICABILITY OF STATUTORY SAFE HARBOR

146.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the materially false and misleading statements alleged in this Complaint.   The statements alleged to be false and misleading all relate to historical facts of existing conditions and were not identified as forward-looking statements.

## IX.    PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

147.    Lead Plaintiffs are entitled to a presumption of reliance on Defendants' misrepresentations of material facts and omissions pursuant to the fraud-on-the-market doctrine.

148.    At all relevant times, the market for Tupperware's publicly traded securities was an efficient market for the following reasons, among others:

(a)    Tupperware met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient market;

(b)    as a regulated issuer, Tupperware filed periodic public reports with the SEC;

(c)    Tupperware regularly communicated with public investors via means of established market communication mechanisms, including through regular dissemination of press releases on the nation's newswire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(d)    Tupperware was followed by numerous securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace; and

(e)     the market for Tupperware securities promptly digested current information regarding Tupperware from all publicly available sources and reflected such information in Tupperware's share price.

149.    All purchasers of Tupperware's publicly traded securities during the Class Period relied on the same information disseminated by Defendants as reflected in the market price of Tupperware's publicly traded securities and suffered similar injury through their purchases at artificially inflated prices.

## X.    CLASS ACTION ALLEGATIONS

150.    Lead Plaintiffs bring this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons and entities that purchased Tupperware's publicly traded securities on the open market of a U.S. stock exchange during the Class Period, February 23, 2022 through March 16, 2023, inclusive, and were damaged thereby.  Excluded from the Class are (a) Defendants; (b) members of the immediate family of each Individual Defendant; (c) any person who was an officer or director of the Company, at all relevant times; (d) any firm, trust, corporation, officer, or other entity in which any Defendant has or had a controlling interest; (e) any person who participated in the wrongdoing alleged herein; and (f) the legal representatives, heirs, agents, affiliates, beneficiaries, successors-in-interest, or assigns of any such excluded party.

151.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Throughout the Class Period,

Tupperware's publicly traded securities were actively traded on the NYSE. While the exact number of Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class. Thousands of shares of Tupperware's publicly traded securities were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Tupperware or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

152.    Lead Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

153.    Lead Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Lead Plaintiffs have no interests that conflict with those of the Class.

154.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The questions of law and fact common to the Class include: (1) whether Defendants violated the Exchange Act; (2) whether Defendants issued false or misleading statements; and (3) the extent to which members of the Class have sustained damages.

155.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members of the Class is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

156.   There will be no difficulty in the management of this action as a class action.

## COUNT I

### FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER
### (AGAINST THE COMPANY AND INDIVIDUAL DEFENDANTS)

157.   Lead Plaintiffs repeat and re-allege each and every allegation contained above in ¶¶ 1-156 as if fully set forth herein and further alleges as follows:

158.   This Count is asserted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of Lead Plaintiffs and members of the Class against the Company and the Individual Defendants.

159.   During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged herein; and (b) cause Lead Plaintiffs and other members of the Class to purchase Tupperware's publicly traded securities at

artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each Individual Defendant, took the actions set forth herein.

160.   The Company and the Individual Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's publicly traded securities in an effort to maintain artificially high market prices for Tupperware's publicly traded securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

161.   The Company and Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Tupperware's financial well-being, operations, and prospects, as specified herein.

162.   During the Class Period, the Company and the Individual Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

163.    The Company and the Individual Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.   The Company and the Individual Defendants engaged in this misconduct to conceal Tupperware's true condition from the investing public and to support the artificially inflated prices of the Company's publicly traded securities.

164.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Tupperware's publicly traded securities was artificially inflated during the Class Period.   In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Lead Plaintiffs and the other members of the Class purchased Tupperware securities during the Class Period at artificially high prices and were damaged thereby.

165.    Lead Plaintiffs and the Class would not have purchased the Company's publicly traded securities at the prices they paid, or at all, had they been aware that the market prices for Tupperware's publicly traded securities had been artificially inflated by the Company and the Individual Defendants' fraudulent course of conduct.

166.   As a direct and proximate result of the Company's and the Individual Defendants' wrongful conduct, Lead Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's publicly traded securities during the Class Period.

167.   By virtue of the foregoing, the Company and the Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

<u>**COUNT II**</u>

**FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT
(AGAINST THE INDIVIDUAL DEFENDANTS)**

168.   Lead Plaintiffs repeat and re-allege each and every allegation contained above in ¶¶ 1-156 as if fully set forth herein and further alleges as follows:

169.   This Count is asserted pursuant to Section 20(a) of the Exchange Act against the Individual Defendants on behalf of Lead Plaintiffs and members of the Class.

170.   As alleged above, Tupperware is liable to Lead Plaintiffs and members of the Class based on the materially false and misleading statements and omissions as set forth above, pursuant to Section 10(a) of the Exchange Act.

171.   Throughout the Class Period, the Individual Defendants were controlling persons of Tupperware within the meaning of Section 20(a) of the Exchange Act as alleged herein, and culpable participants in the fraud alleged herein.

172.   By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations

and intimate knowledge of the Company's accounting and actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's financial statements, reports, press releases, public filings, and other statements alleged by Lead Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

173.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence, the decision-making of Tupperware, including the content of its financial statements and other public statements.

174.    Given their individual and collective responsibilities for managing Tupperware throughout the Class Period, the Individual Defendants were regularly presented to the market as the individuals responsible for the Company's day-to-day business and operations, as well as its strategic direction.

175.    As set forth above, the Individual Defendants acted knowingly and intentionally, or in such a deliberately reckless manner as to constitute willful fraud and deceit upon Lead Plaintiffs and other members of the Class who purchased Tupperware's publicly traded securities stock during the Class Period.

176.    Each of the Individual Defendants culpably participated in some meaningful sense in the fraud alleged herein.  By reason of the foregoing, and by virtue of their position as controlling persons, the Individual Defendants are liable to Lead Plaintiffs and members of the Class for violations of Section 20(a) of the Exchange Act.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs pray for relief and judgment, as follows:

(A)    Determining that this action is a proper class action and certifying Lead Plaintiffs as a class representative under Rule 23 of the Federal Rules of Civil Procedure;

(B)    Awarding damages in favor of Lead Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' violations of the Exchange Act, in an amount to be proven at trial, including prejudgment interest thereon;

(C)    Awarding Lead Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(D)    Granting such other and further relief as the Court deems just and proper.

## XII.  JURY TRIAL DEMANDED

Lead Plaintiffs hereby demand a trial by jury.

DATED: January 12, 2024                 Respectfully submitted,

                                        *Yaniv Adar, Esq.*

                                        _____

                                        Yaniv Adar
                                        Florida Bar No. 720852
                                        yaniv@markmigdal.com
                                        Etan Mark
                                        Florida Bar No. 720852
                                        etan@markmigdal.com
                                        **MARK MIGDAL & HAYDEN**
                                        80 S.W. 8th Street, Suite 1999
                                        Miami, Florida 33130
                                        Telephone: (305) 374-0440

                                        *Liaison Counsel for Lead Plaintiffs,*
                                        *Lead Counsel, and the Proposed Class*

                                        **BERNSTEIN LIEBHARD LLP**
                                        Stanley D. Bernstein
                                        Michael S. Bigin
                                        Adam M. Federer
                                        10 East 40th Street
                                        New York, NY  10016
                                        Telephone: (212) 779-1414
                                        Facsimile: (212) 779-3218
                                        bernstein@bernlieb.com
                                        bigin@bernlieb.com
                                        afederer@bernlieb.com

                                        *Lead Counsel for the Lead Plaintiffs and the*
                                        *Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, a true and accurate copy of the above document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send Notice of Electronic Filing to all counsel of record.

*/s/ Yaniv Adar, Esq.*
Yaniv Adar